Argued and submitted May 12,
reversed and remanded September 8, 1980

In the Matter of the Marriage of

HANSEN,
*Respondent,*
*and*
HANSEN,
*Appellant.*

(No. 75-5333, CA 17107)

616 P2d 567

Kip W. Leonard, Eugene, argued the cause and filed the brief for appellant.

Peter C. Kelsay, Cottage Grove, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Mother appeals from an order of the trial court changing custody of the parties' two minor children from mother to father. Mother asserts that father failed to establish a change of circumstances justifying the change in custody and that the trial court denied mother her right to counsel. We reverse and remand.

It is necessary to detail many of the facts in this case. They are as follows.

The decree of dissolution was entered on January 19, 1977, and awarded custody of the parties' two minor daughters, then aged six and two and a half, to the mother. Father was given the "right to reasonable visitation," which was specifically set forth as the right to visit the children two Saturdays a month for the first six months, after which he would have the right to visit one weekend per month. He was also given the right to visit the children for one week during the summer, three days during Easter vacation and three days between Christmas and the New Year's holiday, beginning in 1978. He was to give a specific amount of notice before each visit. The progression in the amount of visiting time was to allow father to get to know the children, particularly the younger daughter who had been only a few months old when father moved out of the family home.

In September, 1979, father filed two motions, one to show cause why mother should not be held in contempt of court for failing to allow the father reasonable visitations with the children, and the other to show cause why the original decree should not be modified to change custody from mother to father.

After receiving the show cause orders, mother retained an attorney.[1] Mother's attorney and father's

---

[1] Mother had previously retained a different attorney to represent her in the dissolution proceeding and had communicated with him about visitation-related matters following the dissolution.

attorney signed a stipulated order on behalf of their clients removing the motions, which had been set for hearing, from the trial docket, and providing that the motions could be reset at the request of either party.

On December 11, 1979, father filed a supplemental affidavit saying he had allowed the matters to be taken off the docket because he had been assured that he would be allowed his visitation rights and detailing mother's subsequent lack of cooperation in this regard. At the request of father's attorney, the show cause orders were placed back on the trial docket for January 17, 1980.

On December 20, 1979, mother's attorney filed notice that he had withdrawn from the attorney-client relationship. On January 4, 1980, Judge Roland K. Rodman, responding to an inquiry from mother, wrote advising her of the date and time of the hearing, and further stating, "[i]f you are not going to have * * * [the withdrawn attorney] represent you further, I suggest you retain other counsel to appear with you on the 17th."

Mother appeared at calendar call on the morning of the trial date unrepresented by counsel. She responded affirmatively to the judge's question as to whether she was ready to go forward. The following exchange then took place.

"THE COURT: Mrs. Zachary [mother's present married name], you have been advised there is a contempt proceeding in regard to this matter. Do you understand that if you were to be found guilty of contempt that you would be subject to a fine and also subject to imprisonment? Do you understand that?

"MRS. ZACHARY: I do now.

"THE COURT: Well, did you know it before this time?

"MRS. ZACHARY: I knew I could be fined.

"THE COURT: You didn't know you could be put in jail?

"MRS. ZACHARY: No.

"THE COURT:   Let me indicate to you so you will have some idea of the seriousness of this that it might be in your best interests to be represented by an attorney in regard to this.

"MRS. ZACHARY:   We can not afford the price of this and the cost for an attorney."

The court then asked some questions to which mother responded that she was unemployed and that her current husband earned $7.86 an hour in a mill. She stated that she had had an attorney who "wanted $1,500 to come up here and represent us." The trial judge commented that there were probably members of the bar who would adequately represent her for less than $1,500. He then made the following statement:

"* * * * *

"If you were indigent and didn't have any money at all or any resources, the Court would appoint an attorney to represent you. But in your situation where the wage earner is making over seven dollars an hour —I know a lot of lawyers that aren't making seven dollars an hour.

"So I'm going to postpone this case for a period of two weeks, and I would suggest that you better be represented by an attorney when it comes up again.

"* * * * *."

Father's counsel objected to the postponement, stating that father was alleging that he had been denied vistation for over two years, that the attorney who had withdrawn from the case had been the second attorney retained by mother, that resetting of the trial had been provided for by stipulation, and that father had out-of-town witnesses present and ready to testify.

The court then asked mother what efforts she had made to get another attorney. She replied that she and her husband had made no effort to find another attorney, deciding instead to appear by themselves.

In response to further questions, mother stated that she and her husband had $10,000 equity in their home and owed $5,000 in medical bills.

The trial court, after noting that "your husband makes $7.86 an hour, you have a $10,000 equity in your home, and you haven't made any effort to acquire an attorney since December 20th * * *," assigned the case for hearing that same day.

At the outset of the hearing, mother asked the trial judge for a two week delay so that she could obtain an attorney in Eugene because she understood from what she was told by the calender call judge that she could obtain legal assistance in Eugene at a more reasonable fee than that asked for by her Roseburg attorney.

Father's attorney again objected, citing the same reasons given at calendar call, and the trial judge denied the request for postponement.[2]

The testimony at the hearing revealed that both parties had remarried, that father's new wife had a teenage son with whom father had an excellent relationship, and that mother and her new husband had two small children of their own. Mother's new husband had a good relationship with and expressed love for the children who are the subject of this custody suit. Father raised no question about the physical environment provided for the children by mother. His motions were based upon mother's alleged interference with his attempted visits as provided for in the decree.

Father testified that he made most of the visits provided for during the first six months after the decree. The maternal grandmother testified that he did not. During this period, father was allowed to take the children out of the house only twice.

Testimony from father and his witnesses indicated that he had made consistent efforts to see the girls since October, 1977, but was allowed only six

_____

[2] The trial court told mother's present husband that he was free to go out and hire an attorney while the proceedings began. He elected to stay and sit with his wife at counsel's table.

visits between October, 1977 and January, 1980, with only two of these outside the home. He was never allowed a weekend visit, a summer visit, an Easter visit or a Christmas visit. Mother's excuses, despite the fact that father always gave the proper amount of notice, were generally that the family already had other plans or that the girls did not want to see their father.[3]

Father also testified that, when he visited the children in mother's home, he was not allowed to be alone with them, that mother would cause confrontations when father arrived at the house and he would have to coax the children from the home. Testimony and photographs indicate that, once the children were out of mother's house and with father, they were happy and unafraid.

Mother admitted that she never initiated any contact with father concerning the children, and that she had never encouraged the children to write or call their father. The children were using mother's new husband's last name without benefit of court order, although father had not agreed to this. Without detailing further examples, we can state that there is substantial, believable evidence that mother has acted in a manner designed to alienate the children from their father.

Mother's chief contention was that father was free to see the children if the children wanted to see him. She testified that she would neither encourage nor force them to go with their father. In response to the court's inquiries as to whether she always allowed these young children to make their own decisions, she acknowledged that it would depend upon whether what they wanted to do comported with what she

---

[3] A summary of the visitation attempts from October, 1977 on, kept by father's new wife, was admitted into evidence. The few times when he did not 'ask for the visits provided for in the decree are explained by bad weather—father lives in Seaside and mother in Brookings—or serious illness of one of mother's infant children from her new marriage.

wanted them to do. Her responses to the court's inquires demonstrated that she was not impressed with the fact that the visits were mandated by the decree.

In written findings, the trial judge determined that mother was in contempt, but declined to hold her in contempt because he did not believe that this would change her posture of complying with her own interpretation of the decree. The court instead changed custody from mother to father, finding that there had been a substantial change of circumstances and that it would be in the best interests of the children to order the change.[4]

We examine first mother's contention that she was denied her right to counsel.[5]

ORS 33.095(1) provides for a right to counsel in contempt proceedings. ORS 33.095(2) provides:

"(2) If the alleged contemnor is not represented by counsel when he comes before the court, the court shall inform him of the right to counsel, and of the right to appoint counsel if the alleged contemnor is indigent and the proceedings may result in any incarceration. If the alleged contemnor is indigent and the

---

[4] The findings of the court were as follows:

"IT IS THE FINDING OF THIS COURT that:

"1. The Respondent, Mrs. Zachery, is in contempt of this Court.

"2. The attitude of Respondent is such that she will comply with her intepretation of the decree and not with the Court Record.

"3. The Respondent would not require the children to ever comply with the decree.

"4. The Court has determined it cannot enforce the visitation rights without a change of attitude from the Respondent, therefore the court would not find the Respondent in contempt.

"5. That there is a substantial change of circumstances and it is in the best interest of the children, DANETTE MICHELL HANSEN and NICOLE ANN HANSEN, that the Decree be modified."

[5] Mother also contended that the court erred in finding mother in contempt because it did not specifically find that she had acted willfully or with bad intent. We do not reach this question because the trial judge declined to hold mother in contempt. *See n 4, supra.*

proceedings may result in his incarceration, the court, upon the alleged contemnor's request shall appoint counsel to represent him."

Mother contends that the trial court erred in failing to make sufficient inquiry into the possibility that she might be indigent and in failing to allow mother the two weeks requested continuance to find an attorney.

■    As to the indigency question, we agree with the trial court that the evidence did not warrant the appointment of counsel. Ignoring the evidence of her husbands earnings, her equity in their house established that she was not indigent.

■■    Mother's motion for a continuance was directed to the discretion of the trial court and we review only for an abuse of discretion. *State v. Zorner,* 4 Or App 84, 475 P2d 990 *rev den* (1970), *cert den* 403 US 936 (1971). The trial judge could determine that mother knew of her right to an attorney from the facts that she had hired and fired an attorney and had been advised by Judge Rodman to hire a new one prior to the hearing. In light of the further facts that there was a stipulated order allowing the matter to be placed on the docket at the request of either party and that mother had taken no steps to hire a new attorney since the formal withdrawal of her last attorney a month before the hearing, the trial judge acted within his discretion in refusing to allow a continuance so that mother could look for an attorney within her means on the day of the hearing.

■    We turn now to mother's contention that father failed to establish a change of circumstances justifying the change in custody. Our de novo review of the record convinces us that mother's interference with visitation has not been of a magnitude that justifies removal of the children to their father's care in order to promote their best interests.

We are presented with a situation in which two children are taken from the custody of an

otherwise fit and loving mother because the mother cannot get along with father. Her behavior is contumacious, certainly, and should be treated as such. However, we show little regard for our own decrees if, instead of enforcing them by means of our contempt powers, we throw up our hands and order a change in custody—a change which punishes the children too much and the mother not enough.

It is true, as father argues, that we found a change of circumstances justifying a change of custody in *Birge and Birge,* 34 Or App 581, 579 P2d 297 (1978), where a father's interference with visitation was found to be designed to alienate the children from their mother and involved confrontations in front of the children.

*Birge* was an extreme situation. The facts before us are not so aggravated as those in *Birge.* We think here that it was inappropriate to resort to the option of changing custody, at least until practical experience had shown that the sanction of contempt was ineffective when imposed upon this mother.

Reversed and remanded for further proceedings on the contempt issue. No costs to either party.

**ROBERTS, J.,** dissenting.

I dissent because I do not find the facts of this case distinguishable from those in *Birge and Birge,* 34 Or App 581, 579 P2d 297 (1978), wherein we concluded that father's interference with visitation was designed to alienate the children from their mother and amounted to a change of circumstances sufficient to justify a change of custody for the protection of the child's best interests.

Further, the record here shows a great improvement in father's stability and ability to care for the children since the time of the dissolution. Such an improvement will be viewed as a change of circumstances which justifies a change where the change is

in the best interests of the child in light of all of the evidence. *Greisamer and Greisamer,* 276 Or 397, 555 P2d 28 (1976).

In this case, father's improvement alone would not justify the change, since mother seems generally to be a fit parent. However, the acrimonious situation created by mother's refusal to allow visitation combined with father's current ability to care for the children, convince me that it is in the best interests of the children to move them to father's care.[1]

I would affirm the opinion of the trial court.

---

[1] I note also that the children have been in the father's custody as the trial judge ordered an immediate transfer of custody. We stated in *Niedert and Niedert,* 28 Or App 309, 559 P2d 515 *rev den* (1977), that the wiser course is generally to stay the transfer of custody to avoid unnecessary emotional costs to the children from moving them back and forth. However, that was not done here.