Argued and submitted September 11, reversed and remanded
with directions December 30, 1981

# In the Matter of the Marriage of
## HEINEL,
*Respondent,*
*and*
## KESSEL,
*Appellant.*

## (No. 78-4131, CA A20716)

637 P2d 1313

Laurie K. Smith, Eugene, argued the cause for appellant. With her on the brief was Frye & Smith, Lawyers, P.C., Eugene.

S. Susannah Miller, Eugene, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Van Hoomissen, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Mother appeals the denial of her motion to modify the custody provisions of a dissolution decree that provided for the parties to have joint custody of their four-year-old son and for the child to "reside primarily" with father. Mother seeks sole custody.

The decree of dissolution was entered October 6, 1978. The parties' initial custody arrangement was quite flexible and not the subject of disagreement. Generally, the boy spent Tuesdays and Thursdays with mother and Mondays and Wednesdays with father, with no fixed schedule for the weekends. However, on the whole, he spent most of his time at his mother's house.[1]

The primary cause of animosity between the parties was their disagreement over which school the boy should attend. He attended kindergarten and began first grade at the public school nearest mother's home. However, one month into the school year in the first grade, father removed him from his classroom (in the view of the other students) and transferred him to another public school. Father testified that mother would not agree to any school arrangement that he offered and that he transferred the boy, partly because it was more convenient and not "as downtownish," but primarily because, in his words,

"* * * I felt that if I did not start to take control somewhat of my situation in regard to the custody of [the child], then I had the feeling that [mother] was just going to try to take him away and go for full custody."

He also testified that he interpreted the "reside primarily with father" language of the decree to mean that he had the right to make unilateral decisions about where the boy would go to school. When asked whether the joint custody arrangement was working, he said,

"To the extent that there is any communication between [mother] and I, it's not working. But to the extent for [the child], I believe it's really good for him."

---

[1] Mother's records showed that in 1979 the boy spent 194 days with her and 158 days with father and in 1980 he spent 208 days with her and 158 days with father. Apparently, the "reside primarily with father" language of the decree either had no effect on the parties' custody arrangement or means something we cannot discern.

Nonetheless, he said that he would prefer to have sole custody of the child.

Cooperative communication between the parties ended as a result of the school transfer. They are presently adhering to a rigid custody schedule: Mother has the child Tuesdays and Thursdays and every other weekend (including Fridays) and father has him on Mondays and Wednesdays and alternate weekends.

The trial court found that there was no evidence of changed circumstances justifying an award of full custody to either parent. We disagree.

■   Standards for allowing or denying modification of a custody award were articulated in *Greisamer and Greisamer,* 276 Or 397, 555 P2d 28 (1976). A two-step analysis is required. First, a determination must be made whether, since the original decree, there has been a substantial change of circumstances "relevant to the capacity of the plaintiff or the custodial parent to properly take care of the child." 276 Or at 400. If the court finds that there has been such a change, it must then decide whether "it would be for the best interests of the child to change custody from the custodial parent to the other." 276 Or at 400. Because *Greisamer* was addressed to the situation where a party seeks a complete change of custody from one parent to the other, it is arguably inapplicable where a party seeks to end *joint* custody. Here, the circumstances have not changed with respect to the *capacity* of either parent properly to take care of the child. Rather, the parties have ceased to communicate and cooperate.

■■   Whatever else the term "joint custody" means, it at least implies that the parties to a joint custody decree exercise "simultaneous and continual sharing of rights and responsibilities." *Murray and Musto,* 47 Or App 245, 249 614 P2d 132, *rev den* 290 Or 1 (1980); *see also, Clement and Clement,* 52 Or App 101, 627 P2d 1263, *rev den* 291 Or 368 (1981). Communication and cooperation between the parents is essential to a joint custody arrangement. The animosity resulting from the school transfer in the present case is a substantial change of circumstances since the original decree, because the original, cooperative arrangement has broken down and one parent has resorted to unilateral self-help

*See Bohn and Bohn,* 43 Or App 561, 603 P2d 781 (1979), *modified* 288 Or 697, 607 P2d 1375 (1980); *Christie and Christie,* 54 Or App 985, 636 P2d 1022 (1981).

There was conflicting testimony about the effect of the present custody arrangement on the child. Mother testified that the child is unhappy, does not want to go back and forth and wants to live at her house. Father's new wife testified that the child told her he wants to keep going back and forth. Both parties expressed concern that the child was being mistreated by the other parent.

■　　　The trial court found that the custody arrangement was not detrimental to the child. However, harm need not be shown in order to justify modification of the decree. Given a substantial change in circumstances, proof that a change in custody would "be for the best interests of the child," *Greisamer and Greisamer, supra,* 276 Or at 400, is sufficient. Although we do not hold as a matter of law that the daily shifting of a child from one parent to the other cannot be in the best interests of the child,[2] where, as here, the parties to such an arrangement have ceased to communicate and have begun to suspect one another of improperly caring for the child, an award of full custody to one of the parents will best promote the child's welfare. *Cf. Clement and Clement, supra,* 52 Or App at 204 (animosity arising out of a custody arrangement is likely to have an adverse effect on the interests of the child, and joint custody is inappropriate).

■　　　Because we conclude that joint custody must be terminated in this case, we have to decide which parent is to be awarded custody. The record is clear that both parties love the child and can provide him adequate care and nurture. It is also clear that mother has played a somewhat stronger and more stable parental role. Since the filing of the dissolution petition, father has moved four times, living with two different women before meeting and marrying his

---

[2] "Ever shifting parental figures" has repeatedly been seen as the evil to be avoided in custody cases. *Greisamer and Greisamer, supra,* 276 Or at 402; *Niedert and Niedert,* 28 Or App 309, 559 P2d 515 (1976), *rev den* (1977); *Miller v. Miller,* 10 Or App 330, 499 P2d 826 (1972); *Mackey v. Mackey,* 9 Or App 113, 496 P2d 21 (1972); *McCutchan v. McCutchan,* 5 Or App 96, 483 P2d 93 (1971).

present wife. During the same period, mother has maintained a constant relationship with her present husband. She has made most of the arrangements for the child's medical care and has been significantly more involved in the child's education. We award her custody and remand to the trial court for a determination of reasonable child support as well as a visitation schedule.

Reversed; remanded for entry of a decree awarding custody to mother, fixing child support and establishing a visitation schedule.