Argued and submitted October 16, 1981,
affirmed as modified July 8, 1982

In the Matter of the Marriage of

ELGIN,
*Appellant,*
*and*
ELGIN,
*Respondent.*

(No. 38055, CA A21351)

647 P2d 941

Scott A. Fewel, Corvallis, argued the cause for appellant. With him on the brief was Eickelberg & Fewel, Corvallis.

Thomas E. Elliott, Corvallis, argued the cause and filed the brief for respondent.

Before Joseph, Chief Judge, and Warden and Warren, Judges.

JOSEPH, C. J.

### JOSEPH, C. J.

Wife appeals a dissolution decree, contending that the trial court erred in awarding custody of the parties' two pre-school age children to husband and in not awarding spousal support.

The parties were college students when they were married in September, 1972. Husband graduated in 1974, is now a co-owner of an insurance business and anticipates a net monthly income of $1,500 when the business is firmly established. During his college years, he worked summers to pay his college expenses. Wife quit school when the parties were married in order to work full-time. After the birth of their first child in 1976, she stayed at home as a full-time homemaker until she returned to work as husband's secretary in March, 1979. At the time of the hearing, she was a full-time student, expecting to graduate in June, 1981, and then to pursue a two-year graduate program. She was also working part-time as a counselor, making $240 per month.

The judge awarded custody of the children to father. He awarded wife the family home, subject to encumbrances.[1] Husband was awarded his interest in the insurance business and was ordered to pay $750 in back child support and wife's attorney fees and costs.[2]

Wife claims that the judge's basis for awarding custody of the children to husband was "an outdated and erroneous belief regarding a wife's 'total commitment to the parenting role,'" which, she says, is apparent from the following paragraph in his letter opinion:

"The Wife is attending Oregon State and is employed part-time in counselling at a center for adolescent boys. These activities, coupled with her parenting responsibilities and romantic involvement with [her] male friend have reduced her being totally committed to her parenting role. The husband is struggling to establish a life insurance business. He has completed his schooling. He is not in any serious involvement with a female."

---

[1] After the decree, the family home was sold for $54,000, subject to a $44,000 mortgage. $3,000 of the proceeds was to be used to pay off a debt to one of wife's friends.

[2] Husband has not challenged any part of the decree.

Wife says:

"In a day and age in which women's rights are becoming of importance as in the sixties for the rights of minorities, it seems ironic that because a woman is attempting to accomplish what her husband has done, she should be denied the right of the custodial parent responsibilities."

She argues that the trial court, in essence, penalized her for having put husband through school and for now attempting to do the same thing for herself. She also claims that the judge isolated and relied upon her "apparent" involvement with a "male friend."

The primary consideration in determining child custody is the best interests and welfare of the children. ORS 107.137(1). The judge's comments at trial indicate he was well aware of that:

"* * * I know that the law is that if there's another man or there's another woman, that that alone is not the only factor the Court is going to consider.

"* * * * *

"I'm trying to explain to all of you, as far as I'm concerned you're not here to be bad-mouthing the other person. I know people get drunk and they come home and their kids are in bed, I know women who are separated from their husbands sleep with other men, but what I want to know is what is in the best interest of the children.

"* * * * *

"* * * I'm going to judge him or her about how he or she can continue a decent sort of relationship between these children and eliminate the problems that are causing the [children's] emotional upset, it's just that simple."

Furthermore, wife neglects the court's reasons for awarding custody to father:

"The father appears to be poised, self-composed, and realistic about the problems of the dissolved marriage. The professional staff of the day care nursery where the children attend, and others, are supportive of the father's better ability to deal with the problems of the children. The co-workers and family of the mother are supportive of her.

"The choice between two relatively fit parents to act as custodial parent in the best interests of the children is

difficult, but on balance it appears that the father is most likely to provide the better custodial care. This may change when, and if, the relationship of the mother with her male friend becomes permanent and stable, and when the mother has obtained her personal, educational, and occupational goals."

Where, as here, "delicate human relationships are at stake," the opportunity to observe the witnesses and assess their sincerity, self-reliance, temperament and other personality traits is accorded great weight. *McCoy and McCoy,* 28 Or App 919, 924, 562 P2d 207, 29 Or App 287, 563 P2d 738 (1977). Our review of the record does not convince us that the judge erred in awarding custody of the children to husband.[3] *See Jewell and Jewell,* 51 Or App 129, 624 P2d 1092, *rev den* 290 Or 853 (1981).

However, we agree with wife that it was error to omit a spousal support provision from the decree. Although wife's tuition at graduate school will be paid through an assistanceship, her income is meager relative to husband's. She expects to complete her graduate degree in June, 1983. It is equitable that husband pay her $200 monthly spousal support until that time and for one year thereafter.

The decree is modified to award wife $200 monthly spousal support to and including June, 1984, effective the date of the original decree and, as modified, affirmed. Costs to wife.

---

[3] Neither party voices any question about wife's responsibility for child support.