Argued and submitted February 16, reversed April 27, 1983

In the Matter of the Marriage of

SMITH,
*Appellant,*
*and*
SMITH,
*Respondent.*

(36870; CA A25282)

662 P2d 772

Gretchen R. Morris, Corvallis, argued the cause for appellant. With her on the brief was Fenner, Barnhisel, Morris & Willis, Corvallis.

Michael F. McClain, Corvallis, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Petitioner, the divorced mother of two minor children, seeks reversal of a circuit court order changing custody of the children from her to father. On *de novo* review, we conclude that respondent has failed to demonstrate that circumstances have changed substantially since the entry of the original custody order and that a change in custody would serve the best interests of the children. Accordingly, we reverse.

Mother and father separated in April, 1980. A decree of divorce was entered in August, 1980, giving mother custody of the couple's two children, Jeffrey, then *age six, and Justin, age four.* Father secured

> "The right of visitation at reasonable times and places including every other weekend during the school year, two days every other week during the summer * * * and four weeks during the summer during which [mother] shall have visitation on alternate weekends."

In the months following their divorce, mother and father had some difficulty arranging visitation to their mutual satisfaction. In response to their conflicts, the circuit court, in December, 1980, set a detailed visitation schedule that included the days and times when father was to pick up and return the children.

In June, 1981, father moved for change of custody. The accompanying affidavit set forth five "changes in circumstances" that, in his view, justified the change:

> "1. That [mother] has interfered with my visitation rights and my parental rights in almost every respect since the entry of the [Dissolution] Decree.
>
> "2. That [mother] has attempted to affect the children's love and affection for me through her words and actions.
>
> "3. That [mother] has remarried[1] and her present husband's attitudes and actions have constituted mental, emotional and physical abuse upon the two minor children through various acts of various words and actions ranging from physical abuse to psychological abuse.

---

[1] In September, 1980, Joe Reynolds moved in with mother. They married in January, 1981.

"4. That the mental and emotional attitude[s] of the children have substantially changed which has affected their outlook and their relationships with their peers.

"5. That [mother] and her present husband do not adequately care for the needs of the minor children and, in fact, have not given to them adequate medical care even though advised by both myself and the family pediatrition [sic] that such care was necessary. That these children have been on occasion left alone without proper or adequate supervision and their [sic] has been no consistency in their care of these children."

Mother responded with a counter-motion to modify the visitation schedule by reducing father's visitation time.

A hearing was held in December, 1981. Seven months later, the court issued an order changing custody from mother to father. In a memorandum opinion explaining its reasons for the change, the court said:

"* * * [Mother] was engaged in a continual and concerted effort to restrict the [father's] contact with the boys. * * * The Court is satisfied that these efforts to reduce [father's] contact with the boys has [sic] been detrimental to their well-being. * * *

"It is the opinion of this court that [mother's] attitude toward visitation and contact by the boys with their father constitutes a substantial change of circumstances which has been detrimental to the boys' well-being. Although she has been the primary parent of the boys, [father] has always been actively involved in their lives. This Court feels that visitation would be more normal and less tension-producing for the boys if they were in their father's custody. This need overrides the desire to continue relationships. * * *"

The order changing custody from mother to father was entered on July 14, 1982. This appeal followed.

■■ A parent seeking a change of custody has the burden of showing "that a substantial change of circumstances and conditions has occurred since the prior order respecting custody and that the proposed change of custody would be in the best interests of the children." *Ellis and Ellis,* 17 Or App 86, 87, 520 P2d 475 (1974). After considering each of father's allegations separately, we agree with the trial court that the evidence supporting the third and

fifth allegations does not demonstrate a substantial change of circumstances warranting a transfer of custody.[2] Father's other three contentions require further discussion.

■ First, father asserts that mother has interfered with his visitation and other parental rights. We find very little in the record to support this claim. As noted above, the circuit court established a specific visitation schedule in December, 1980. A year later, when the circuit court held its hearing on father's motion, his attorney conceded in his opening statement that, since the December, 1980, order

> "Things have gone along reasonably well—not super well, but reasonably well—better.
>
> "* * * * *
>
> "* * * To our knowledge, there hasn't been any problem with * * * visitation since the order of last December has been ordered."

Father's other evidence is consistent with his attorney's statement. The specific visitation difficulties that he describes all occurred prior to the December, 1980, order. Since then, any time mother has attempted to deviate from the set visitation schedule,[3] she has had legitimate reasons. She has also proposed alternative times for father to make up lost visits and she has made herself available for discussion of the changes. All in all, father's evidence of visitation problems falls far short of establishing a change in circumstances severe enough to warrant a change in custody. *Compare Hansen and Hansen,* 48 Or App 193, 616 P2d 567 (1980); *Birge and Birge,* 34 Or App 581, 579 P2d 297 (1978).

■ With respect to father's other parental rights, his only evidence is that, in the months immediately following the divorce, mother instructed the boys' schools that father was not to be involved in the children's education without

---

[2] The court disposed of father's third and fifth allegations by stating that (1) it did not "feel" that mother had failed to provide the children with adequate medical care, and (2) father's "contentions concerning the actions of the stepfather * * * would also not have been sufficient to warrant a change of custody."

[3] Father has also requested variations from the schedule from time to time to accommodate his work schedule.

her consent.[4] However, both boys' teachers testified that they had had teacher-parent conferences with father shortly before the hearing. Although mother's early attempts to curtail his participation in the boys' education may have been inappropriate, it appears that she has changed her policy. Mother's instructions to the schools do not comprise a substantial change in circumstances warranting a change in custody.

■    Father next asserts that mother has attempted to "affect the children's love and affection" for him. The unhappy relationship between mother and father has left mother unenthusiastic about father and her negative feelings are, from time to time, apparent to Jeffrey and Justin. But mere hostility between parents does not serve as the basis for a change in custody, because that is not a problem that a custody change would solve. Indeed, the record in this case contains more evidence of father's attempts to alienate the boys from mother and her husband than of mother's attempts to alienate the boys from father.[5] *Compare Birge and Birge, supra.* Father's second allegation will not, therefore, support a change in custody.

■    Finally, father contends that since the divorce the boys' mental and emotional attitudes have changed in a manner that has damaged their outlooks and their relationships with their peers. One of Jeffrey's teachers testified that he had become sadder and more "inward" since the divorce. Justin's pre-school teacher testified that he is "disruptive," uses "bathroom" language and is frequently intolerant of other children. Other evidence shows, however, that Jeffrey has plenty of friends, that he plays well

---

[4] Immediately after the divorce, mother instructed the boys' pre-school that father was "not to call on or visit Jeff and Justin at pre-school without mother's permission." She also wrote to Jeffrey's teacher that father was "undergoing psychological therapy and counseling" and said,

> "If he attempts to contact you, visit Jeff in class, deliver him to school, or pick him up, [father] must provide you with written permission from me. When he has successfully completed his therapy, I will feel more inclined to allow him involvement with Jeff's school activities and teachers."

Father testified that he had not undergone any type of psychological treatment.

[5] Mother testified that father rewarded the boys for saying "bad things" about herself and Reynolds, that he told the boys they did not have to obey Reynolds and that the boys were frequently reserved and sometimes hostile after they returned from visits with father.

with those friends, and that his performance in school is above average. There is also evidence that Justin's academic progress is satisfactory. Viewed as a whole, the evidence does not demonstate a substantial change in circumstances such that a custody change would be in the boys' best interest. In the past two and one-half years Justin and Jeffrey have experienced their parents' separation and divorce, their mother's remarriage and a custody fight. Such occurrences are bound to have negative effects on young children. We are convinced that any changes in the boys' outlooks have resulted from the divorce and the residual antagonistic relationship between their parents. Both mother and father bear the responsibility for the children's emotional upheaval, and a change of custody would do nothing to improve the situation. In fact, another disruption in the boys' family life would likely exacerbate existing problems.

We have said in the past that a change in circumstances must be " 'quite real if the benefits from a [custody] change are to overcome the damage done to a child who is exposed to shiftng parental figures.' " *Morton and Morton,* 53 Or App 301, 307, 632 P2d 1 (1981), *citing Mackey v. Mackey,* 9 Or App 113, 496 P2d 21 (1972). We are satisfied that that is not the case here.

Reversed.