Argued and submitted January 20, reversed October 31, 1984, reconsideration denied January 11, petition for review denied February 20, 1985 (298 Or 705)

In the Matter of the Marriage of

## POULSON,
*Respondent,*

*and*

## POULSON,
*Appellant.*

(82-2874-NJ-2; CA A29731)

690 P2d 526

Michael G. Smith, Medford, argued the cause and filed the brief for appellant.

James H. Smith, Medford, argued the cause for respondent. With him on the brief was Grantland, Smith & Grensky.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

Van Hoomissen, J., dissenting.

## GILLETTE, J.

In this child custody case, mother appeals from a trial court order changing custody from her to father. The sole issue before us is whether there was a substantial change of circumstances since entry of the original decree sufficient to justify the modification. *See Mackey v. Mackey,* 9 Or App 113, 496 P2d 21 (1972). On *de novo* review, we reverse.

On June 14, 1983, a dissolution decree was entered awarding custody of the parties' two minor children, ages 6 and 3, to mother. The decree provided that mother "shall not permit unrelated males to stay in the home overnight when the children are in the home * * *." This provision was apparently directed toward mother's relationship with her boyfriend, although he was not specifically named in the decree.

Six weeks later, father procured an order requiring mother to show cause why custody should not be changed. A hearing was held on August 22, 1983.[1] Mother's subsequent motion to allow further testimony was denied. On September 9, 1983, the trial court entered its memorandum opinion and findings, stating:

"The Court finds that the respondent is in direct violation of the Court's decree in that she has allowed an unrelated male to spend the night while the children were in the home.

"There was sufficient evidence offered at the divorce trial for the Court to find that the respondent's relationship with an unrelated male was detrimental to the children. The Court felt, at that time, respondent should be awarded the children because of their age and the fact that she had been the primary parent. The Court hoped that, by its decree limiting the visitation of the respondent's boyfriend, it could eliminate the

---

[1] At the hearing, the court stated:

"I just felt he was not allowed to spend the nights there, that this one, would test the relationship, she would get married to the man, would have to deal with that, or, two, she would break off the relationship with him. I don't feel that he is a good influence on them, a man who will call neighbor kids names and throw eggs and this typical pattern of what he was doing before, he is a very immature person and I don't think really a good influence on anybody's children, that is my position. Certainly I want that made clear that I don't think this Court has a right to tell her who she sees except as it may influence the children. I think if he is not there overnight, he is obviously spending more time than was anticipated he would spend there."

adverse affect *[sic];* but the mother has made it clear that the relationship with her boyfriend is more important than her children by an open violation of the Court's decree.

"The Court also finds the father to be a fit and proper person to care for the children. The only adverse findings were his emotional problems that were caused by the breakup of the marriage. He has held a good job for a number of years and can offer the stability necessary for the children."

Mother then moved for a stay of execution of the order pending appeal; her motion was denied.[2] The children are presently in the custody of the father.

■　　　When a change in child custody is sought by the noncustodial parent, that parent must show that events since the original custody determination have changed substantially with respect to the custodial parent's ability to care for the child and that a change in custody will serve the child's best interests. *Greisamer and Greisamer,* 276 Or 397, 400, 555 P2d 28 (1976); *see Gonyea v. Gonyea,* 232 Or 367, 375 P2d 808 (1962). Children need a stable environment. The primary purpose of the rule requiring a substantial change of circumstances is to facilitate stability. *Niedert and Niedert,* 28 Or App 309, 313, 559 P2d 515 (1977).[3]

---

[2] The court stated:

"MR. MICHAEL SMITH: Are you going to be more specific in terms of reasons, specific reasons why?

"THE COURT: No.

"\* \* \* \* \*

"THE COURT: They will have this on the record, I assume you will get a transcript. First of all I don't agree with your case, the Niedert case. For a Judge, for a Trial Judge to go ahead and stay, in other words, first of all we make a custody determination based on what we think is the best interest of the child and to then go ahead and stay what we thought was in the best interest of the child is saying we doubt our own decision. I don't doubt my decision for a second, I think my decision is correct and these children are much better off with the father than the mother. This is based on the fact that she has demonstrated her willingness to directly violate a Court order. I found that she has had the live-in boyfriend, or former live-in boyfriend staying overnight. He was a bad influence on the children, this came out in the evidence, they were throwing water on the neighbor children and calling them obscene names. In the prior trial in this situation, he was involved in drugs, he carries a gun, that he in essence is not the kind of person that these children should be subjected to. Is that specific enough for you?"

[3] It is for this reason as well that we stated in *Niedert v. Niedert, supra,* 28 Or App at 317:

"Where a change of custody is ordered and the question is close or presents no

■     In this case, the evidence of a "changed" circumstance addressed at the hearing consists of mother's failure to abide by the provision in the decree regarding unrelated male guests staying overnight and a single egg-throwing and name-calling incident. All the other evidence was before the court during the original custody hearing. The trial court found the evidence sufficient to justify a change in custody, notwithstanding the fact that (1) the court had made its original decision approximately two months before the change, (2) the children had lived in mother's home since birth and (3) the trial court had previously found that mother was the "primary parent."

Turning first to the decree provision regarding overnight male guests, we confess to a degree of frustration concerning it. If it was intended to address mother's relationship with a particular male—as we gather it was—the court should have drawn it that way. Instead, its language makes it appear on its face that the trial court is making an anticipatory moral judgment respecting mother's future relationship with any male—something we are sure the court did not intend and are not certain it would be entitled to make a condition of a custody award.

Focusing on the more limited interpretation apparently intended by the trial court, we have further difficulties with the pivotal provision. Although the court apparently intended to curtail or eliminate mother's relationship with her boyfriend, the device chosen—forbidding her to permit him to stay overnight—could hardly be expected to accomplish that. There is nothing inherent in being in the house "overnight"; any imaginable misbehavior involving mother and her boyfriend could as easily occur at high noon as at midnight.

It may be that mother's failure to abide by this

---

imminent danger to the child's welfare, a stay should be granted to freeze the situation. In that way, the entitlement of a parent to de novo appellate review can be preserved without unnecessary emotional cost to the child. A motion for a stay should first be made to the trial court which, having seen and heard the witnesses, is in the best position to decide upon the wisdom of a stay. If a stay is denied, it would be well if the trial court explains its reasons for the denial so that if a subsequent application is made to this court for a stay, we may give all due weight to the trial court determination."

The trial court's animadversion to *Niedert* notwithstanding, *see* n 2, *supra,* this case appears to be a classic one in which a stay would have been justified.

provision should have provoked a finding of contempt. *See Hansen and Hansen,* 48 Or App 193, 616 P2d 567 (1980). We fail to discern, however, how that violation affected the children's welfare to any substantial degree. Their stability should not be disrupted solely because of the mother's indiscretion, at least without a showing that their welfare is threatened. As to both the decree violation and the egg-throwing incident, we find our statement in *Niedert v. Niedert,* 28 Or App at 314, apposite:

> "In this proceeding the mother's performance as a parent has been closely examined and vigorously attacked. As a result, isolated instances of poor judgment or indiscretion have been disclosed, but it is doubtful that any parent's performance would appear unblemished upon such close scrutiny. A change of circumstances is not established by showing that the custodial parent has made occasional mistakes since the entry of the decree, for every parent does * * *. Where the proof of change of circumstances is based upon specific instances of purported parental misfeasance—and often that is the only knowledge available to a concerned noncustodial parent—these events must be of a nature or number that reflect a course of conduct or pattern of inadequate care which has had or threatens to have a discernable adverse effect upon the child. No such showing has been made here."

*See also Smith and Smith,* 62 Or App 728, 662 P2d 772 (1983).

Reversed. Costs to appellant.

**VAN HOOMISSEN, J.,** dissenting.

I would defer to Judge Sawyer's decision. *See McFadden v. McFadden,* 206 Or 253, 257, 292 P2d 795 (1956). Therefore, I respectfully dissent.

Judge Sawyer initially awarded custody of the children to mother. He specifically ordered in the dissolution decree that she

> "* * * shall not permit unrelated males to stay in the home overnight when the children are in the home * * *."

That proviso was directed at her boyfriend, Laurence, although he was not actually named.

The record satisfies me that Judge Sawyer would not have awarded custody of the children to mother *but for* her assurances that Laurence would not stay overnight in the

childrens' home when they were there. That conclusion is supported by the judge's statements at the modification hearing:

"* * * [W]hen I heard the trial one of the reasons I put it in the decree, I didn't think that Mr. Laurence was a proper person to be around those children so you don't need to convince me he is not a proper person, I was convinced of that at the trial.

"* * * * *

"* * * [I]t is not like I have never heard the case before, I spent a long time listening and it wasn't an easy decision that I made because I think it appeared that Mr. Laurence, I didn't approve of him * * *.

"* * * * *

"* * * I told her that at the time of the child custody hearing, make a choice, make a choice between him and her kids * * *.

"* * * * *

"* * * This is a case where Mrs. Poulson has chosen to violate what the court ordered, whether she has or has not is the whole issue. I got on the other issue a little bit because it reassures me that Mr. Laurence is the kind of person I thought he was at the time of the trial, is the kind of person that shouldn't be around these children.

"* * * * *

"* * * I don't doubt my decision for a second, I think my decision is correct and these children are much better off with the father than the mother. This is based on the fact that she has demonstrated her willingness to directly violate a Court order. I found that she has had the live-in boyfriend, or former live-in boyfriend staying overnight. He was a bad influence on the children, this came out in the evidence * * *. *In the prior trial in this situation, he was involved in drugs, he carries a gun, that he in essence is not the kind of person that these children should be subjected to.* * * *" (Emphasis supplied.)

At the modification hearing, father's counsel stated:

"* * * Your Honor, as you are aware you heard this matter at trial June 2, 1983, and a decree was entered on June 14, 1983, with the custody being awarded to Mrs. Poulson of the two minor children, and it is specifically stated in the decree that she was not to permit any unrelated male to stay in the home overnight, she wouldn't cohabit with any unrelated

males when the children were in the home, and I'm sure you remember the situation, but I specifically remembered the statement being made that she was asked specifically, 'Let me know if Plin Laurence is going to stay in the home with the children and overnight, *if so I will give the custody to the father.*' Right now she said, 'No, that wouldn't happen.' " (Emphasis supplied.)

Mother's counsel did not challenge that statement.

Judge Sawyer found:

"The Court finds that the respondent is in direct violation of the Court's decree in that she has allowed an unrelated male to spend the night while the children were in the home.

"There was sufficient evidence offered at the divorce trial for the Court to find that the respondent's relationship with [Laurence] was detrimental to the children. The Court felt, at that time, respondent should be awarded the children because of their age and the fact that she had been the primary parent. The Court hoped that, by its decree limiting the visitation of [Laurence] it could eliminate the adverse effect; but the mother has made it clear that the relationship with [Laurence] is more important than her children * * *.

"The Court also finds the father to be a fit and proper person to care for the children. * * *."

Here, the evidence of a changed circumstance consists of mother's willful violation of a provision in the parties' dissolution decree specifically included for the protection of the children. She did not appeal from that provision and she is bound by it. It was at the very heart of Judge Sawyer's initial custody award to her. She clearly understood the provision. Unfortunately, she put her needs ahead of those of her children. Her willful violation was relevant to her capacity to care properly for them. The evidence of changed circumstances was sufficient.[1]

---

[1]Judge Sawyer apparently did not even consider holding mother in contempt, because he felt that Laurence was such a bad influence on the children that he was unwilling to leave them at risk. From this ivory tower, I am not willing to second-guess Judge Sawyer on that question.