Submitted on record and briefs March 29, judgment modified by deleting limitation of award of custody to mother September 14, 1988

# In the Matter of the Marriage of

## ROLLINS,
*Appellant,*
*and*

## ROLLINS,
*Respondent.*

(87-01-30963; CA A45690)

760 P2d 1381

Michael W. Peterkin, La Grande, for appellant.

No appearance by respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

### ROSSMAN, J.

Mother appeals from a decree of dissolution which granted her custody but ordered that she "completely disassociate" the children from her boyfriend and prevent "any future contact" between the children and him.

In its written opinion, the trial court stated:

"Where a detrimental effect has occurred or appears likely, the Court may remedy that by restrictions on future, personal association. *Read v. Read,* 229 Or 113, 115, 366 P2d 164 (1961); *Poulson and Poulson,* 70 Or App 505, 507, 508, 690 P2d 526, *rev den,* 298 Or 705 (1985).[1]

"Nothing in the record indicates gross, meretricious relationships, or casual attitudes towards moral issues. The record does reflect that [boyfriend] is not a proper role model for these children in view of his law violations and other questionable activities, no matter how well intentioned he might appear. Mother will be granted custody of the children subject to father having reasonable visitation rights. Mother shall completely disassociate herself and the children from [boyfriend], excluding any incidental contact that she may have at her employment."

On reconsideration, the trial court deleted the provision which barred mother from associating with her boyfriend. However, the remaining restriction was left. The sole issue on appeal is whether—given the facts of this case—it was proper for the trial court to condition mother's custody by prohibiting any contact between her children and her boyfriend.

We begin by observing that this was a bitter divorce, involving—among other issues—the custody of three children, two aged 7 and one aged 14. The evidence pertaining to the boyfriend can be summarized concisely. He had been convicted of felony driving while suspended approximately three years earlier. At the time of trial, he did not have a valid

---

1 Neither of these cases stands for the proposition stated by the trial court. *Read* held that the custodial parent's marriage to a man whose presence the trial court had decided would be harmful to the children justified a modification of custody. 229 Or at 114. In *Poulson,* we held that the mother's violation of a condition in the decree which sought to "curtail or eliminate mother's relationship with her boyfriend," because "he was involved in drugs, he carries a gun, that he in essence is not the kind of person that these children should be subjected to," without a showing that the children's welfare was threatened, did not constitute a substantial change in circumstances justifying a change in custody. 70 Or App at 508-10.

Oregon driver's license, but husband's brother testified that he had seen him driving a vehicle with the children. There was also testimony that he had ridden a motorcycle in the woods with the 14-year-old. Husband's brother, who had been convicted of delivery of a controlled substance to a minor, also testified that the boyfriend, in his presence, telephoned someone in California to arrange a drug deal. Mother and the boyfriend denied any drug use or involvement; the boyfriend had no arrests or convictions for any drug-related charges. Husband testified that the two younger children did not like the boyfriend. His brother testified that the children appeared to be "drawn into themselves" in the boyfriend's presence; husband's mother testified that they were quiet after being around him.

Testimony regarding the boyfriend's involvement with raising the children was minimal. He did not live with mother. Husband's father testified that he heard the boyfriend tell one of the children to spit out some gum; the boyfriend testified that he would occasionally discipline the children "only for their safety." There was also testimony that the boyfriend had told the older child to wear a coat that was too warm for the weather conditions.

Mother argues that the decision of the trial court to condition her custody of the children was erroneous, because it was based on speculation and without any showing of adverse effects on the children. She also advances a constitutional argument, contending that the restriction on the contact between her children and boyfriend violates her due process rights, particularly should she desire to marry him.

We turn first to the non-constitutional argument, the thrust of which is that the condition imposed on her custody is not warranted without extraordinary circumstances, that there was no showing at trial of any future adverse effects of the boyfriend's association with the children and that the condition was not necessary to protect the best interests of the children. Mother notes that, should she wish to marry her boyfriend, she would have to move the court for permission. Thus, the spectre of contempt would hang over her at all times. Mother also contends that, in determining who should be given custody of children after a dissolution, the court is

not empowered to fashion an environment of its own choosing, but must choose between the environments offered by the two parties.

Although our review is *de novo,* we are mindful that where, as here, " 'delicate human relationships are at stake,' the [trial court's] opportunity to observe the witnesses and assess their sincerity, self-reliance, temperament and other personality traits is accorded great weight." *Elgin and Elgin,* 58 Or App 94, 98, 647 P2d 941 (1982), quoting *McCoy and McCoy,* 28 Or App 919, 924, 562 P2d 207, *modified* 29 Or App 287, 563 P2d 738 (1977). Thus, in making decisions regarding custody matters, where the guiding principle is the "best interests" of the child, the appellate courts of this state have traditionally deferred to the trial judge who is in the best position to weigh the various factors involved and whose decision should not lightly be disturbed on appeal. *Perley v. Perley,* 220 Or 399, 401, 349 P2d 663 (1960); *Edwards v. Edwards,* 191 Or 275, 280-81, 227 P2d 975 (1951). Nonetheless, we conclude that the trial court was wrong in this instance.

Custody is controlled by ORS 107.137, which states that "the court shall give primary consideration to the best interests and welfare of the child." That section does not explicitly grant authority to a trial court to impose conditions on custody, but we have inferred the authority from it. In *Walter and Walter,* 27 Or App 721, 557 P2d 57 (1976), we struck down a requirement in a custody decree that required that the wife not "cohabit" with "a man not her husband" while the children were in her custody. We stated that conditions should be imposed on custody awards "only when necessary to protect the best interests of the welfare of the child." 27 Or App at 723.

It is clear from its written opinion that the trial court did not use that standard. Instead, it decided that the boyfriend should be completely disassociated from the children, because he "is not a proper role model." Although that was a factor that the court could properly consider in deciding who should get custody, it was not sufficient to justify the condition the court imposed. Reviewing the record, we are unable to find any evidence that the children's contact with the boyfriend resulted in any harm to them and no evidence that

contact with him was likely to produce such harm in the future.[2]

Inherent in a custody award is the right of the custodian to make basic parental decisions, such as who can or cannot associate with the children. Neither a trial court in the first instance—nor this court on appellate review—can restrict or condition the custodial parent's freedom in that regard, unless the record contains persuasive evidence that it would be in the best interests of the child to do so. This record does not contain an evidentiary basis for limiting mother's rights, and the condition placed on the award of custody is deleted from the decree. Accordingly, we need not reach mother's constitutional argument.

Judgment modified by deleting limitation of award of custody to mother; no costs to either party.

---

[2] The trial court made no findings of fact and did not refer to any specific evidence in the record relevant to the conditioning of mother's custody, except for the brief written material cited in its opinion. Moreover, the trial court did not address the question of credibility in its decision. Thus, we are unable to tell whether the trial court felt that certain evidence may have been tainted and lacking in weight. It is important that, when a trial court decides a question of custody based on factors that are not readily apparent from the face of the record, such as the "sincerity, self-reliance, temperament and other personality traits" of the witnesses, it should explain—on the record—the basis for its decision. In particular, if it believes that someone was not telling the truth, it should say *who* it thinks was lying and *what about*.