481

Argued and submitted July 10, reversed and remanded with instructions
September 6, 1995

In the Matter of the Marriage of

William R. MAY,
*Appellant,*
*and*

Karen L. MAY,
*Respondent.*

(91DO0316DS; CA A84015)

901 P2d 938

Sharon L. Hockett argued the cause and filed the brief for appellant.

Karen L. May waived appearance *pro se*.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

Father appeals a judgment denying his request for a modification of child custody. On *de novo* review, ORS 19.125(3), we reverse.

Father and mother divorced in May of 1992. At the time of the dissolution, mother had a history of drug and alcohol abuse. She had, however, recently stopped using both drugs and alcohol and had begun treatment. The trial court awarded her custody of the parties' five-year-old child, Sebastian, and awarded father custody of their ten-year-old child, John.[1] The trial court awarded father the family residence, but allowed mother to live there for the balance of the year. At the time of the dissolution, the home needed some paint and repairs, but it was otherwise clean and in good condition.

In the months that followed, mother refused to permit father to visit Sebastian, and father was forced to seek the court's assistance to obtain visitation. Meanwhile, mother began drinking again and was seen drunk in public and at home. In one instance, mother was found lying down outside of a local shopping center vomiting and unable to stand up. Police had to escort her home, and mother asked father to take care of Sebastian. When father arrived, mother was incoherent and crying. As Sebastian entered father's car, mother followed, put her arms around the child's neck and began choking him. Father and John eventually loosened mother's choke hold, but Sebastian was screaming. In another episode, mother came home drunk and fell over onto the couch, on top of Sebastian, who was sleeping. She got up, only to fall on him again. Mother frequently would leave Sebastian and John at home, tell them that she was only going to the store, and then come back three to five hours later. Other witnesses reported seeing mother walking drunk down the street, in heavy traffic, with Sebastian about four strides ahead of her.

During that same time, mother and Sebastian lived in the family home. Over the course of six months, the house deteriorated significantly through neglect and waste. What occurred was more than mere neglect; mother's treatment of

---

[1] The trial court also awarded mother custody of the parties' 16-year-old child. Custody of that child is not at issue in this case.

the house left it uninhabitable and led to health-threatening conditions. Photographs entered into evidence show hundreds of large trash sacks of garbage, most of it spilled out of torn or open bags. The garbage filled most of the basement and stairway, as well as some exterior areas. The mess filled six pickup loads and two 20-cubic-yard dumpsters.

The kitchen sink was broken, according to mother, "for a good month," and the bathtub was full of dirty dishes. A pet rabbit was allowed to run loose in the house and left feces throughout. Rats lived in the house and had built nests in the pipes, in the washer and the dryer, in the stove, in the insulation and in at least one mattress. A person who helped clean out the house after mother left said that he killed 50 rats while cleaning. A toilet was cracked and ripped from the floor. The doors had holes in them and did not close. There were holes in the walls. At least one electrical outlet had exposed wires. Sebastian was not regularly bathed and wore dirty clothing, often inappropriate for the weather. He was often fed no more than one meal a day.

Mother remained unemployed during that time. She ultimately moved out of the family home to an apartment, where living conditions were similarly − although not as extraordinarily − unsanitary. Mother began a relationship with a boyfriend, who has threatened father and has refused to allow father to see Sebastian. She testified that she had taken classes at a local community college, but was unable to name the classes she had taken or provide proof of registration.

Father remarried. He continued his employment at the job he had before the dissolution, a job that he has had since 1969. Father is a Jehovah's Witness. Ordinarily, adherents are not permitted to associate with nonbelievers. Father nevertheless permitted John to visit mother. Father cares well for John, who reported that he was happy living with father and that mother rarely attempted to contact him. Sebastian occasionally visits father and his wife, and says that his relationship with his stepmother is "excellent."

In July 1993, father sought modification of custody of Sebastian. Among the bases for the request were mother's

excessive drinking, her neglect of Sebastian, and her destruction of the home in which she and Sebastian lived. The trial court held a hearing on the motion and concluded, without explanation, that father "has failed to meet his burden of proof." The trial court did change visitation, however, commenting:

> "[Father's] religious views and [mother's] personal philosophy clash on every conceivable issue related to parenting the children. The stress attached to this conflict has adversely [a]ffected the ability of each party to co-operate on [father's] visitation.
>
> "* * * * *
>
> "[Mother] believes that [father's] religion requires [father] to constantly proselyt[ize] [Sebastian] to [father's] religion which would result in total alienation of [Sebastian] from his Mother."

On appeal, father argues that the trial court erred in failing to conclude that a substantial change of circumstances had occurred and that it is not in the best interests of Sebastian to be in father's custody. Mother has not responded on appeal.

■■ A party requesting a modification of custody must show both a substantial change in circumstances and that the modification of custody would be in the child's best interests. *Ortiz and Ortiz*, 310 Or 644, 649, 801 P2d 767 (1990). Although the decision of the trial court is regarded as persuasive, particularly regarding matters of credibility, we are not bound by the trial court's decision. *Rollins and Rollins*, 93 Or App 150, 154, 760 P2d 1381 (1988). Moreover, in this case, the trial court made no findings that one party was more credible than another; the court offered no explanation for its decision that father had failed to meet his burden of proof.

■■ A number of factors may constitute a change of circumstances sufficient to warrant a modification of custody. Among them are the instability of the custodial parent and the custodial parent's neglect of the child. *Greisamer and Greisamer*, 276 Or 397, 402, 555 P2d 28, *rem'd* 27 Or App 521, 556 P2d 992 (1976); *Heinel and Kessel*, 55 Or App 275, 279-80, 637 P2d 1313 (1981); *Gwinner and Gwinner*, 24 Or App 743, 747, 547 P2d 151 (1976). Isolated instances of

misconduct will not suffice. There must be proof that the custodial parent's actions were

> "of a nature or number that reflect a course of conduct or pattern of inadequate care which has had or threatens to have a discernable adverse effect upon the child."

*Niedert and Niedert*, 28 Or App 309, 314, 559 P2d 515 (1977).

■ Based on our careful review of the record, we conclude that father has met his burden of proof. There has been a substantial change of circumstances since the entry of the original dissolution judgment, and it is now in the best interests of Sebastian to be in the custody of his father. Mother repeatedly consumed alcohol to the point of extreme intoxication at home, in front of the child and in public. Her drinking caused her to act in ways and to fail to act under circumstances that threatened the physical welfare of the child. She left Sebastian at home for extended periods of time while she went drinking. She failed to provide basic care for him, including clean clothes, regular meals and baths. She allowed Sebastian to live in squalid and unsanitary conditions for extended periods of time.

Father, meanwhile, has remarried. His and his new wife's relationship with Sebastian is, in the child's own words, "excellent." Father has been steadily employed, cares for both children and provides for their basic needs. Although father's religion generally requires its adherents to refrain from contacting nonbelievers, father has testified that he will not allow that to interfere with visitation with mother, and father's conduct during the year following the dissolution bears that out. We do not agree with the trial court's apparent conclusion that father's religious views outweigh all other considerations in determining the best interests of the child. Under these facts, and considering father's express intention to allow mother reasonable and seasonable visitation with Sebastian, we conclude that the best interests of Sebastian require a modification of custody from mother to father.

Reversed and remanded for entry of modified judgment awarding custody of Sebastian to father with reasonable and seasonable visitation to mother. No costs to either party.