Argued and submitted November 7, 1996, vacated and remanded in part; otherwise affirmed April 16, 1997

In the Matter of the Marriage of

John T. JACKSON,
*Appellant,*

*and*

Rebecca JACKSON,
nka Bates,
*Respondent.*

(D092-408; CA A90838)

936 P2d 1043

Philip F. Schuster II argued the cause for appellant. With him on the briefs was Dierking & Schuster.

Michael G. Gunn argued the cause for respondent. With him on the brief was Michael G. Gunn, P.C.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Father appeals from a judgment that denied his motion to modify custody of the parties' two sons, granted mother's motion to modify visitation, subject to conditions, and granted mother's motion to hold father in contempt for failing to return the children to her following a scheduled visitation. We affirm the disposition as to custody and the finding of contempt but modify the disposition as to visitation.

The parties divorced in June 1991. The trial court awarded mother custody of the parties' two sons, J.T., who was five, and Joel, who was three. Mother has two other sons from previous marriages: Leroy, her oldest son, who does not live with her, and Michael, who was 10 years old at the time of dissolution and who does live with her.

At the time of the dissolution proceeding, father sought custody, contending that Michael had sexually abused J.T. and possibly Joel. The trial court determined that those allegations were unfounded. Shortly thereafter, father renewed his efforts to obtain custody, asserting that Joel had been sexually abused in mother's home. Again, the trial court found the allegations of abuse to be unfounded. In that context, the court, which was concerned about the effects of father's conduct on the children, explicitly warned him:

> "[I]'m not going to allow visitation if this—if the kids are going to be pumped or questioned or subjected in any way to conversations about their brother's [Michael's] behavior or what their mother does, or those kinds of things, during visitation. * * * And if it happens that they're being pumped or that there's reporting and it turns out like this situation, I'm not going to bother with supervised visitation, I'm going to take some real drastic action."

Since 1993, mother, Michael, J.T., and Joel have been living with Ed Parrish, whom mother intends to marry.

The events that immediately precipitated this litigation began in December 1993, when J.T. and Joel visited their father, who was living in Reno, Nevada. Father claims that, during that visit, Joel told him that he had been sexually abused by Michael, his half-brother. Father called his

father, John Jackson, Sr., who then called Parrish. Parrish asked the Newberg Police Department to investigate.

On January 13, 1994, Detective Ken Summers of the Newberg Police Department conducted videotaped interviews of Michael, J.T., and Joel. During his interview, Joel gave fragmented and contradictory responses to questions about the alleged abuse. Michael denied that he had abused Joel, and J.T. told Summers that he did not believe that any abuse had occurred. Consequently, no further action was taken.

In August 1994, J.T. and Joel traveled to Reno for summer visitation. During that visit, Joel again told father that he had been abused by Michael.[1] Also during that visit, both J.T. and Joel told father that they had been struck and threatened by mother's companion, Parrish. At about the same time, father also learned that Parrish had been convicted of sexual abuse of an adult woman and had been found in contempt for violating a restraining order against his former wife. In addition, father learned that J.T. was suffering from a peptic ulcer, which father believed was the product of stress from conditions in mother's household.[2]

Father did not return the children to mother at the conclusion of the visitation, on August 16. On August 18, father filed an *ex parte* motion for emergency temporary custody, which was denied. On August 22, father filed a motion for an order to show cause why he should not be awarded permanent custody of the children. He asserted, particularly, that modification of custody was warranted by three considerations, any or all of which constituted a substantial change of circumstances: (1) Michael's alleged sexual abuse of Joel; (2) Parrish's alleged physical abuse of J.T. and Joel; and (3) J.T.'s and Joel's anxiety, including physical symptoms of that stress, which father attributed to conditions in mother's household. Mother responded by seeking an order directing

---

[1] Father subsequently contacted the Washoe County Sheriff's Office, and a detective with that office interviewed Joel. Joel told the detective that he had already spoken to Detective Summers in Oregon regarding that incident.

[2] In fact, J.T. had been suffering from extreme anxiety since 1991, when his parents divorced. He was diagnosed with a peptic ulcer in the spring of 1994 and periodically experienced facial tics that were associated with anxiety.

father to immediately return the children. She also moved to have father held in contempt for wilfully refusing to return the children and further sought to terminate father's visitation rights.

During a hearing on September 23, the court ordered father to return the children to mother, and father complied with that order. The court consolidated the remaining matters for trial. After receiving testimony from a variety of witnesses, including expert testimony by three clinical psychologists, the court found that there was no credible evidence that J.T. or Joel had been physically or sexually abused by anyone, particularly anyone in mother's household—*e.g.*, Michael or Parrish. The court also determined that, although J.T. and Joel were experiencing substantial stress, that stress and its symptoms were not attributable to conditions in mother's household. Accordingly, the court denied father's motion seeking modification of custody.

At the same time, the court granted mother's motion to terminate father's visitation, finding, in part, that the children's stress is "associated with petitioner's obsessive pursuit of custody of the boys." The court terminated father's visitation pending satisfaction of, and compliance with, specified terms and conditions:

"A.  Petitioner's visitation with the said minor children is terminated until such time that Dr. Dale Brounstein, the children's therapist, in consultation with the children's treating physician, determines that visitation by petitioner with the said minor children poses no medical or psychological threat to the said minor children's well-being.

"B.  Additionally, before any visitation by either petitioner or petitioner's parents (Mr. and Mrs. John Jackson Sr.) is allowed; [3]

"1).  Both petitioner and petitioner's parents (Mr. and Mrs. John Jackson Sr.) must sign an agreement prepared by Dr. Brounstein with the assistance of respondent's counsel, with this agreement specifying those topics and

---

[3] Under the dissolution judgment, father was permitted to exercise a weekly visitation on Wednesday evenings. However, because father lived in Reno, mother allowed the children's paternal grandparents to exercise father's visitation on Wednesdays.

treatment goals which both petitioner and his parents must comply with to assure a healthy visitation environment for the minor children.

"a). The cost for the preparation of the said agreement must be paid by petitioner in advance of any services being rendered by either Dr. Brounstein or respondent's counsel associated with the said agreement.

"2). Petitioner shall surrender the minor children's passports to respondent's counsel.

"3). The Court must review and approve the aforesaid Agreement prepared by Dr. Brounstein.

"C. Additionally, the length and term of any visitation set forth in the aforesaid Agreement prepared by Dr. Brounstein shall be subject to review and approval by the Court, and the same shall be embodied in a subsequent Order.

"1). In the event that either petitioner or his parents fail to comply with the aforesaid Agreement or the Court's Order, visitation shall cease immediately."

Finally, the court held father in contempt for failing to return the children immediately after their summer 1994 visitation. The court determined that that violation was wilful.

■ On appeal, father's first assignment of error challenges the court's refusal to award him custody. He reiterates his assertions that the alleged sexual and physical abuse, as well as the children's anxiety, constitutes a substantial change of circumstances and that awarding him custody would be in the best interests of the children. *See, e.g., May and May*, 136 Or App 481, 485, 901 P2d 938 (1995) (reciting standard). We have reviewed the entire record, and, on *de novo* review, ORS 19.125(3), we affirm the trial court's determination that no substantial change of circumstances warranting a modification of custody has occurred. It would neither benefit the parties nor serve some broader public interest to dwell on the details of the record or the particulars of our analysis.[4]

---

[4] Indeed, such elaboration might well be counterproductive to the most vulnerable, involuntary participants in this dispute. *See Sarty v. Forney*, 12 Or App 251,

■ Father's second assignment of error pertains to the termination of visitation. *See* 147 Or App at 504-05 (setting out terms and conditions). Father argues, particularly, that the trial court's termination of visitation pending the satisfaction of certain "open-ended" conditions, including at least one that is beyond his control, is unduly restrictive and is contrary to the children's best interests. Mother responds that the termination of visitation accords with the children's best interests, because father's repeated interrogation about conditions in mother's household and his repeated allegations of abuse are the true cause of the children's stress.

We agree with the trial court that terminating father's visitation, pending satisfaction of appropriate conditions, is in the best interests of the children. *See Kingsbury and Kingsbury*, 141 Or App 304, 309-11, 917 P2d 1055 (1996) (reaffirming that the primary concern in establishing visitation is the best interest of the child). Nevertheless, as explained below, we believe that some of the conditions prescribed in the trial court's judgment were impermissible or inappropriate. Consequently, we direct that certain aspects of the judgment be modified.

■ The trial court terminated visitation because it determined that father's behavior in continually questioning the boys and in "relentless[ly]" pursuing custody was destructive to the children's well-being. The court emphasized that the judge who had presided over the parties' dissolution had explicitly warned father that the court would "take drastic action" if he continued to make false abuse allegations in an effort to obtain custody:

> "It is clear that the issue of sex abuse has been the focus of petitioner's concerns since at least 1991. Judge Gardner addressed it specifically on May 23, 1991. He warned petitioner of dire consequences if petitioner used alleged sex abuse as an artifice to either disrupt respondent's relationship with the children or attempt to gain custody of the boys. * * *

253, 506 P2d 535 (1973) ("While the published opinion of an appellate court in a custody case is rarely a 'best seller,' it is nevertheless a public record which can in later years come to the attention of the children who were the subject of the controversy.").

"* * * * *

"Judge Gardner warned petitioner that drastic action would be required if he continued the course described in 1991. Mr. Jackson has ignored the court's warning."[5]

Termination of visitation, even if temporary and conditional, is an extraordinary measure. *See, e.g., West v. West*, 6 Or App 128, 131, 487 P2d 96 (1971). Nevertheless, given father's failure to heed Judge Gardner's clear warning and the severe, potentially irreparable physical and psychological consequences of that failure, we conclude, on *de novo* review, that it is in the children's best interests to terminate visitation until appropriate conditions are satisfied.

We differ, however, from the trial court in our prescription of "appropriate conditions." Accordingly, we direct that the visitation provisions set out in paragraph 4 of the judgment be modified in the following two respects:

■ *First*, paragraph 4B(1) expressly conditions *father's* visitation upon his *parents'* execution of, and compliance with, the visitation plan. On appeal, father argues—and mother concedes—that that provision is erroneous as rendering father's visitation subject to conditions beyond his control. We agree and, accordingly, direct that, on remand, paragraph 4B(1) be modified to make it clear that father's visitation is not dependent on his parents' agreement to, and compliance with, the visitation plan.[6]

■ *Second*, the same paragraph 4B(1) specifies that the visitation plan shall be prepared "with the assistance of respondent's [mother's] counsel" and that father must pay "the cost for the preparation of the said agreement * * * in advance of any services being rendered by * * * respondent's counsel associated with the said agreement." Father argues, and we agree, that that arrangement is inappropriate in that it places mother's attorney in the position of simultaneously performing three conflicting roles: (1) advocate for mother,

---

[5] *See* 147 Or App at 502 (setting out Judge Gardner's admonition).

[6] Our direction in that regard does not, of course, preclude the court from conditioning father's parents' visitation on their execution of, and compliance with, the visitation agreement. Moreover, the court can prohibit father from permitting contact between the children and his parents until they meet that condition.

who sought to minimize, even eliminate, father's visitation; (2) court-appointed adviser, who, presumably, is to perform a neutral drafting function;[7] and (3) recipient of direct prepayment by father, who contests any limitation on visitation. Accordingly, on remand, the trial court shall delete the provision requiring father to pay mother's counsel's fees in advance of the preparation of the agreement. Except as so modified, we affirm the trial court's disposition as to visitation.

■　　　Finally, in his third assignment of error, father asserts that the court erred in holding him in contempt. He contends that he did not wilfully violate the dissolution judgment by failing to timely return the children to mother following summer visitation because he legitimately feared for the childrens' safety. However, after reviewing the record, we concur in the trial court's determination that the violation of the dissolution judgment was wilful. *See Southworth and Southworth,* 113 Or App 607, 610, 835 P2d 122, *rev den* 314 Or 574 (1992). As with the first assignment of error, a discussion of the record and our analysis as to contempt will be of no benefit to the bench or bar.

Paragraph 4B(1) of judgment vacated and remanded for modification not inconsistent with this opinion; otherwise affirmed. No costs to either party.

---

[7] Unlike the situation in which a court rules from the bench and then asks the prevailing party's attorney to craft an order or judgment that accurately reflects the court's disposition, mother's attorney in this case was asked not merely to memorialize the court's ruling, but to exercise independent professional judgment and discretion in cooperating with the psychologist to craft a plan that would "assure a healthy visitation environment for the minor children."