Argued and submitted January 29, 1999, affirmed August 30, 2000

Kenneth SUMMERS,
*Respondent,*

*v.*

Howard G. BINNS;
John T. Jackson and Larry Alexander,
*Defendants,*

*and*

John Allen STEVENS,
*Appellant.*

(9509-06233; CA A95609)

10 P3d 294

Philip Schuster, II, argued the cause for appellant. With him on the briefs was Dierking & Schuster.

Victor Calzaretta argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Armstrong and Kistler,* Judges.

ARMSTRONG, J.

---

* Kistler, J., *vice* Warren, P. J., retired.

## ARMSTRONG, J.

Defendant Stevens appeals from a judgment in favor of plaintiff on a defamation claim. Stevens assigns error to the trial court's denial of his motion for a directed verdict and its failure to instruct the jury as to absolute and qualified privileges. We affirm.

■     Because the jury returned a verdict in favor of plaintiff, we state the facts in the light most favorable to him. John Jackson was embroiled in a custody dispute with his former spouse, Rebecca Bates. Bates lived in Newberg, Oregon, and Jackson lived in Reno, Nevada. In the proceeding that dissolved Jackson and Bates's marriage, the court had awarded custody of the parties' two children to Bates. In addition, Michael, one of Bates's children from a former marriage, also lived with Bates. Jackson believed that Michael was sexually abusing one or both of his children and that Bates's live-in boyfriend, Ed Parrish, was physically abusing them. Because of the alleged abuse, Jackson repeatedly sought to have custody of his two children awarded to him. *See Jackson and Jackson*, 147 Or App 500, 502-04, 936 P2d 1043 (1997). However, no evidence of abuse was found, and Jackson did not gain custody of his children.

In 1994, Jackson filed a motion for an order to show cause why custody of the children should not be transferred to him. The motion was based in part on his allegation that the children were being physically and sexually abused. *Jackson*, 147 Or App at 503. In support of that claim, Jackson wished to discredit plaintiff, a Newberg detective who had interviewed the children and found no evidence of abuse. Plaintiff had signed an affidavit for Bates's attorney affirming that he had found no evidence of abuse. Jackson hired an attorney, Pam Wilmore, and a private investigator, Larry Alexander, to assist him in the custody matter. He hoped that they would uncover some evidence to discredit plaintiff, particularly evidence that plaintiff was for some reason biased in favor of Bates and Parrish. Eventually, Jackson replaced Wilmore with Howard Binns. Binns expressed dissatisfaction with Alexander's investigation and got Jackson's approval to replace Alexander with Stevens. Pursuant to the

new arrangement, Alexander gave Stevens the information that he had uncovered about plaintiff. In the course of that exchange, Alexander apparently told Stevens that Parrish had furnished drugs to the Newberg police and to plaintiff in particular and that plaintiff was a "nervous wreck" and had tried to get off work by filing a workers' compensation claim for psychological problems.

Stevens relayed that information to plaintiff. He also attempted to further investigate plaintiff. At one point, Jackson called his former insurance agent, Mike Olberding, and asked him whether he knew anything about plaintiff. Olberding apparently told Jackson that plaintiff was a "dirty cop." Jackson then asked Olberding to contact Stevens so that Olberding could relay any information he had about plaintiff to Stevens. Stevens and Olberding set up a meeting at which Stevens made defamatory statements about plaintiff, including the allegation that plaintiff was a drug trafficker who had engaged in drug transactions with Parrish and others at the paper mill where Parrish worked. He claimed that both the Drug Enforcement Agency and the Internal Revenue Service were investigating plaintiff in connection with those activities. After the meeting, Olberding contacted the Newberg city attorney, who then launched an investigation of plaintiff. That investigation found no evidence of illegal activities by plaintiff. The statements that Stevens made to Olberding and those that Olberding made to the city attorney form the basis for the defamation claim against Stevens.

Stevens moved at trial for a directed verdict on plaintiff's claim. The trial court denied the motion, concluding that the statements that Stevens had made to Olberding were not sufficiently relevant to the custody dispute to be covered by the absolute privilege for statements made by attorneys and parties in the course of litigation. Apparently based on that conclusion, the trial court also refused to instruct the jury on that privilege. The jury returned a special verdict for plaintiff against Stevens and Binns, finding that Stevens was acting as Binns's agent when he made the defamatory statements. The jury also returned a separate verdict against Alexander. Only the judgment against Stevens is before us on appeal.

On appeal, Stevens argues that the trial court erred in denying his motion for a directed verdict because plaintiff failed to submit sufficient evidence of falsity and malice to reach the jury on those issues. We reject that argument without discussion. Stevens also argues that the court erred in failing to instruct the jury on the absolute privilege for statements made by attorneys and their agents in the course of litigation. In the alternative, he argues that the trial court should have instructed the jury that his statements were covered by a qualified privilege. Stevens did not raise the issue of qualified privilege below and, accordingly, we do not address it.[1] Although Stevens adequately raised the issue of absolute privilege, his proffered jury instruction contained errors of law. Accordingly, we affirm without reaching the merits.

In this case, defendants, including Stevens, requested the following jury instruction on privilege:

"Absolute privilege attaches to all statements made preliminary to, in the course of, or incidental to, a judicial proceeding, so long as they are relevant to the proceedings. The privilege embraces anything that may possibly be pertinent. All doubt shall be resolved in favor of its relevancy or pertinency. When a defamatory statement is absolutely privileged, no cause of action exists even if the defamatory statement was made with actual malice and was false. [I]f defendant's statement is determined to be absolutely privileged, plaintiff cannot prevail."

The trial court did not give the jury that or any other instruction on the privilege for statements related to litigation. Stevens assigns error to the trial court's failure to provide the above instruction to the jury. However, because the instruction would have erroneously submitted a question of law to the jury, we affirm the trial court's decision not to give the instruction.

---

[1] On appeal, Stevens argues that the trial court's failure to instruct the jury on both absolute and qualified privileges constituted plain error. Because the question whether private investigators are protected by either an absolute or qualified privilege when acting as the agents of attorneys is one of first impression in Oregon, the applicability of the privileges to this case was subject to reasonable dispute. Therefore, the trial court's failure to instruct on those privileges was not plain error. *See, e.g., State v. Scott*, 135 Or App 319, 325, 899 P2d 697, *rev den* 321 Or 560 (1995).

■ Under Oregon law,

"[t]he defense of privilege in a defamation case is a complete bar to recovery. The difference in terms of proof between absolute privilege and qualified or conditional privilege is that the latter requires an affirmative showing that the communication was false and made with actual malice in order to defeat the privilege, whereas the former may be overcome only by demonstrating that the defamatory statement is irrelevant to the subject matter of the proceeding in connection with which the communication is made."

*Ducosin v. Mott*, 49 Or App 369, 371, 619 P2d 678 (1980), *on recons* 50 Or App 207, 622 P2d 763 (1981), *aff'd* 292 Or 764, 642 P2d 1168 (1982) (citations omitted). It is well settled in Oregon that the question whether an absolute privilege applies, more specifically whether allegedly defamatory statements were relevant to the underlying legal proceeding, presents a legal question for the court. *See, e.g., McKinney v. Cooper*, 163 Or 512, 519, 98 P2d 711 (1940). The requested instruction would have erroneously submitted the issue of the relevance of the allegedly defamatory statements to the jury for it to decide. It is error to submit a question of law to the jury as a question of fact. *Johnson v. Shively*, 9 Or 333, 334 (1881). Because the instruction was not correct in all respects, the trial court did not err by refusing to give it. *See Hernandez v. Barbo Machinery Co.*, 327 Or 99, 106, 957 P2d 147 (1998). We therefore affirm.

Affirmed.