Argued and submitted June 26, reversed August 14, 2002

In the Matter of the Marriage of

Darcy Lavonne COLLINS,
*Appellant,*

*and*

George Elwood COLLINS,
*Respondent.*

97-1567-D3; A114714

51 P3d 691

Mary Kim Wood argued the cause for appellant. With her on the brief was Wallace W. Lien, P.C.

No appearance for respondent.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

Mother appeals from the trial court's order modifying the judgment that dissolved her marriage to father. The dissolution judgment awarded her sole custody of the couple's two children. The trial court's modification awarded "physical custody of the minor children to [father], with both parties retaining legal custody and with liberal parenting time being granted" to mother. We review *de novo*, ORS 19.415(3); *Way v. Prosch*, 163 Or App 437, 443, 988 P2d 422 (1999), and reverse.

The parties' seven-year marriage was dissolved in 1997. At that time, their daughter was five and their son was three. Father, a truck driver, traveled frequently and did not seek custody. In 2000, he remarried. Shortly thereafter, disagreements arose between him and mother regarding his visitation schedule. Mother filed a motion seeking either court-ordered mediation or a new parenting plan. Father, however, responded by asking for a change in custody, alleging that mother had physically assaulted their daughter and "engaged in inappropriate sexual activity" in front of the children. Prior to the hearing on the matter, father more explicitly alleged "regular, physical assaults on [the daughter] by [mother], and * * * intimate, lesbian sexual conduct, which [mother] has conducted in places where the children could see it." Based on an evidentiary hearing, the trial court made findings of fact including the following:

"b.    [Mother] has experienced some frustration relating to her effort to work full time as a single parent, while caring for the two children. As a result of this frustration, she has exhibited difficulty controlling her anger from time to time in the presence of the children. In one case in particular, [mother] experienced an outburst which resulted in her shoving [daughter], causing her injury.

"c.    Of significance to the court, was the evidence at hearing that [daughter] has, on several occasions, participated in intimate sexual-like contact with one of her 9-year-old female friends, which the court finds to have been [daughter's] effort to mimic conduct [daughter] observed between her mother and another adult. Exposing a young

child to intimate sexual contact between adults is detrimental to the child's welfare."

Our *de novo* review of the record leads us to somewhat different conclusions, not with regard to the historical facts *per se,* but with regard to some of the surrounding factual observations and inferences.

We find that on one occasion, mother, after work, was attempting to carry on a telephone conversation and prepare dinner. Daughter repeatedly demanded her attention. In frustration, mother pushed her away; daughter fell backwards and hit her head on the floor or wall. She did not bleed or lose consciousness, and mother immediately telephoned father and mother's own parents. Father drove to mother's home and took daughter to the hospital, where she was observed briefly and released with a golf-ball-sized lump on her head. The hospital, pursuant to its statutory obligation, informed state child welfare officials, who investigated and found no reason for further action.

Regarding the "intimate sexual conduct," we find that, on one occasion when mother reasonably believed daughter was asleep in daughter's bedroom, daughter wandered to the door of mother's bedroom and observed her and another woman in bed kissing. On other occasions, daughter might have seen mother and another adult kissing. Further, daughter and a friend confessed to having engaged in prepubescent quasi-erotic behavior with each other on a few occasions. There is no evidence that mother was promiscuous, that either child ever witnessed anything more erotic than kissing, or that either was traumatized by mother's behavior.

The foregoing facts serve as the basis for our custody modification inquiry.

■    A custody modification disrupts the life of the child involved; it is not a step to be taken merely because some change in circumstances has occurred. Thus, we require the party moving for the change to demonstrate that (1) a change in circumstances has occurred since the most recent custodial order, and that (2) the modification will serve the best interests of the child. *State ex rel Johnson v. Bail,* 325 Or 392, 396-97, 938 P2d 209 (1997); *Francois and Francois,* 179 Or App

165, 168, 39 P3d 265 (2002). The first step is a threshold; unless the moving party proves a change in circumstances, the court will not address the best interests of the child. *Bail,* 325 Or at 397; *Francois,* 179 Or App at 168.

■ Although custody modification decisions depend on the particular circumstances in any given situation, certain principles emerge from the cases. The change in circumstances must be substantial. *Southworth and Southworth,* 113 Or App 607, 612, 835 P2d 122, *rev den* 314 Or 574 (1992). Remarriage by either the custodial or noncustodial parent is not a substantial change in circumstances, *Padbury and Padbury,* 46 Or App 533, 537, 612 P2d 321 (1980), nor are isolated instances of misconduct, *May and May,* 136 Or App 481, 485-86, 901 P2d 938 (1995). Rather,

> "[a] change of circumstances is not established by showing that the custodial parent has made occasional mistakes since the entry of the decree, for every parent does, and a working parent in particular may have special problems of child care. Where the proof of change of circumstances is based on specific instances of purported parental misfeasance * * * these events must be of such a nature or number that reflect a course of conduct or pattern of inadequate care which has had or threatens to have a discernable adverse effect upon the child." *Niedert and Niedert,* 28 Or App 309, 314, 559 P2d 515, *rev den* 277 Or 237 (1977).

■ Against this legal and factual background, we conclude that the trial court erred in modifying the custody provision of the dissolution judgment. Father proved no substantial change in circumstances. The trial court relied on only two incidents: mother's shoving daughter onto the floor and mother's inadvertent display of intimacy. Two incidents do not amount to a "course of conduct or pattern of inadequate care," nor is there evidence of "a discernable adverse effect" on either child. *Id.*

Indeed, although the shoving incident is not to be condoned, it was isolated and inadvertent. So too was the "display" of intimacy. *See Niedert,* 28 Or App at 314 (nonexhibitionist sexual intimacy between unmarried adults does not justify change in custody). The fact that mother's companion was of the same sex may have been significant to

father; he frankly testified that he disapproved of mother's "lifestyle." But it is not and cannot be significant to this court. *Cf. Tanner v. OHSU*, 157 Or App 502, 524-25, 971 P2d 435 (1998) (sexual orientation discrimination violates Article I, section 20, of Oregon Constitution); *Ashling and Ashling*, 42 Or App 47, 50, 599 P2d 475, *rev den* 288 Or 113 (1979) (in custody and visitation context, requirement of parental discretion regarding sexual conduct same for lesbians as for heterosexuals).

Because we conclude that father has not proved a substantial change in circumstances, we need not decide whether modification of the custody arrangement would be in the children's best interest.

Reversed.