Submitted June 6, affirmed October 15, 2008

In the Matter of the Marriage of

John Darin BRINKLY,
*Petitioner-Appellant,*
*and*

Melissa Ann BRINKLY,
aka Melissa Ann Harris,
*Respondent-Respondent.*

Washington County Circuit Court
C032299DRC; A137235

195 P3d 405

John D. Brinkly filed the brief *pro se.*

No appearance for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

## LANDAU, P. J.

In this domestic relations case, father appeals a supplemental judgment modifying custody and parenting time. We affirm.

Father filed a dissolution petition on June 16, 2003, and sought full custody of the parties' son. The dissolution judgment was entered on December 20, 2004. At the time of the dissolution judgment, mother had a methamphetamine problem and had been a victim of domestic violence. The child had been removed from mother's care in July 2004 and had been living with father since that time.

The trial court gave father custody of the child, who was nearly five years old at the time. Mother was awarded unsupervised parenting time with the child every other weekend, one evening during each week, and alternating holidays. The dissolution judgment required father to complete 15 months of parenting classes and 24 months of counseling for the child.

On July 26, 2007, mother moved to modify the dissolution judgment with regard to child custody and to award her sole custody of the child. At the hearing on October 8, 2007, Lilly, mother's mental health counselor for the Hope Spring Transitional Housing Program, testified. Lilly explained that the program provides counseling, drug testing, and financial assistance to single mothers struggling with drug dependence and domestic violence. Since mother entered that program in May 2007, Lilly had met with her for 16 counseling sessions and nine sessions of a domestic violence group. Noting that mother had not used drugs in more than one year, Lilly diagnosed mother with "methamphetamine dependence in full, sustained remission." Lilly did not diagnose mother with any other mental health issue. Lilly also testified that every time she had visited mother's home it was neat, clean, and organized, and that mother's attendance and preparation for their counseling sessions was always very good.

The drug and alcohol counselor for the Hope Spring Program, McClain, also testified on mother's behalf. Mother had passed all of the program's random drug testing except

for one in which she tested positive for opiates, which was consistent with mother's pain medication and mother's warning that she might test positive because of her medication. Mother attended a weekly group counseling session facilitated by McClain. McClain also conducted bi-monthly individual counseling sessions with mother in mother's home. During those visits, McClain had observed mother's parenting skills and believed that mother was loving and attentive, and set appropriate boundaries for the child. According to McClain, mother had been clean since August 20, 2006, and McClain had "no question about [mother's] sobriety at this time." Before joining the Hope Spring Program, mother had successfully completed two other drug recovery programs. Mother attended Narcotics Anonymous (NA) meetings twice each week and continued to work that program's steps with a sponsor. Although McClain noted that methamphetamine use always requires an "ongoing recovery," she testified that mother's "prognosis is excellent" because mother had continued to work her recovery program.

Hauptman, who met mother during their participation in recovery programs, also testified. She had seen mother with the child and observed that mother had good parenting skills.

Mother also called father to testify. Mother questioned father about his methods of discipline, to which father responded that he "like[s] to grab [the child's] ear and hold it, just to get his attention. I don't try and pull it off." Father testified that, although he had completed the 15 months of parenting classes, he had kept the child in counseling for only 10 weeks because it became cost-prohibitive. The child attended four different schools in two years. The child attends daycare before and after school to accommodate father's work schedule. The child has a half-sibling who also lives with father; the sibling is close in age to the child and shares a close relationship with the child.

Mother also testified. She stated that she had dramatically improved her life since the initial determination of custody: she had established her own residence; she had successfully completed an outpatient drug and alcohol program; and she was participating in a transitional housing program

to provide her with financial assistance while she developed the professional skills that she needed to be self-sufficient. She was the primary physical custodian for the child during eight of the previous 15 months, except for every other weekend when the child visited with father. Mother had seen father slap the child's face on three occasions. Mother had told the child that he has two dads and that father is not his "real" father. Mother smokes cigarettes; although she usually smokes outside, she occasionally smokes in her bedroom. The child has a 16-month-old half-sibling who lives with mother.

Father responded by calling one witness, his child-care provider, McClees. McClees testified that, over the course of the year that the child had attended her daycare, she had never seen any signs of abuse on either of father's children. She stated that she believed that father is a fit parent.

After excusing McClees, the trial court asked father if he had "[a]nything further," to which father responded, "That should do." The trial court then stated, "You have a right to make a closing argument, and I'm not going to welcome it, because I think I've heard everything I need to hear from both of you. I think I know your positions." The parties made no closing statements.

The court found that a substantial change in circumstances had occurred since the initial dissolution judgment in two ways. First, the court determined that father's failure to complete the required 24 months of counseling for the child constituted a substantial change in circumstances. The court also determined that, in light of the fact that mother's methamphetamine dependence was key to the initial custody determination, mother's "fairly long-term recovery" constituted a substantial change in circumstances.

The court then analyzed whether the custody change would be in the best interests of the child. The court found that, although father is "perhaps more financially stable than Mother," mother provides a more nurturing environment for the child. The court drew attention to father's testimony that he routinely grabbed and held the child's ear as a form of discipline. Although father denied ever striking the

child, the court found credible mother's testimony about seeing father slap the child on three occasions. The court also noted that mother had been a physical custodian for the child during the past year or so.

For those reasons, the court entered a supplemental judgment modifying custody and parenting time to award full custody of the child to mother, with parenting time for father. The supplemental judgment prohibited the following: physical discipline of the child by either party, mother's smoking in her home and vehicle, and mother's statements to the child suggesting that father is not his "real" father. The change in custody became effective on October 21, 2007, and has been in place since that time.

On appeal, father challenges the modification of custody. He advances nine assignments of error. One of his assignments of error relates to the court's purported denial of his right to make a closing argument. As we have noted, the court stated that each party has "a right to make a closing argument" but that the court was "not going to welcome it." Father's claim of error, however, is unpreserved. *See State v. Morrow*, 192 Or App 441, 444, 86 P3d 70, *rev den*, 337 Or 282 (2004) ("[P]ro se litigants are bound by the same preservation rules that bind all other parties."). The balance of father's assignments relate to what he contends are erroneous factual findings and legal conclusions by the trial court.

We review the trial court's modification of child custody *de novo*. ORS 19.415(3). The party seeking a change of custody must demonstrate that, after the last order affecting custody, circumstances relevant to the capacity of either party to care for the child have substantially changed; and that, considering the changed circumstances in the context of the other evidence, a custody change from the legal custodian to the moving party would be in the child's best interests. *Ortiz and Ortiz*, 310 Or 644, 649, 801 P2d 767 (1990). ORS 107.137(1) sets forth the factors to be considered in determining the child's best interests:

> "(a)  The emotional ties between the child and other family members;

"(b)   The interest of the parties in and attitude toward the child;

"(c)   The desirability of continuing an existing relationship;

"(d)   The abuse of one parent by the other;

"(e)   The preference for the primary caregiver of the child, if the caregiver is deemed fit by the court; and

"(f)   The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child."

In this case, mother is the moving party. The court determined that her long-term recovery from methamphetamine use qualified as a substantial change in circumstances. We agree. As the trial court noted, mother's drug dependence was a primary consideration in the initial custody determination, and her ability to care for the child was much improved due to her success in her ongoing recovery. Consequently, it is appropriate to determine whether it was in the best interests of the child to change custody from father to mother.

Based on a review of the record in this case, we agree with the trial court that changing custody from father to mother was in the best interests of the child. Neither parent is perfect. Mother smokes in her home and told the child that father is not his "real" father. Both parties had unstable financial situations. The child has a half-sibling living with each parent, although the sibling living with father is closer to him in age and they enjoy a close relationship. That relationship, however, can be continued during father's parenting time. Mother's attitude toward the child is more nurturing than father's. That is particularly clear given the nature of father's physical discipline of the child; father admitted that he grabbed the child's ear and held it to get the child's attention. Furthermore, the trial court found credible mother's testimony that she had observed father slap the child on three occasions.

In short, on *de novo* review, we conclude the trial court engaged in the appropriate inquiry and came to the correct conclusion.

Affirmed.