Argued and submitted May 27, order awarding legal custody of parties' children reversed and remanded for entry of order awarding custody of the children to mother; supplemental judgment reversed and remanded for creation of a parenting plan for both children August 11, 2010

In the Matter of

Michael TRAVIS,
*Petitioner-Respondent,*

*and*

STATE OF OREGON,
acting by and through the
Division of Child Support,
*Petitioner,*

*and*

Dynasty G. POTTER,
*Respondent-Appellant.*

Clackamas County Circuit Court
DR0010197; A140320

237 P3d 868

Donald J. Molnar argued the cause for petitioner. With him on the brief was Coit and Dean, P.C.

Jeffrey L. Olson argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

Mother appeals an order modifying custody of the couple's older son, S, from mother to father, and awarding father custody of their younger son, D, whose custody status had not previously been determined by a court, as well as a supplemental judgment on her parenting time. With respect to S, mother contends that father failed to prove a substantial change of circumstances since entry of the initial judgment establishing custody. In addition, mother asserts that, even if there was a sufficient change of circumstances, father failed to establish that it was in the best interests of the children for father to be granted custody of them. On *de novo* review, we reverse and remand.[1]

S was born in August 2000, and D was born in August 2003. Custody of S was established by a 2002 stipulated judgment. That judgment awarded mother "primary legal and physical custody" of S initially and awarded mother and father joint custody of S one year from the date of that judgment "if it is not established in court that [father] has violated his parental responsibilities as set out in these orders."[2] In addition to S and D, mother has two older sons, R and J, with a different father, Howard. At the time of the adjudication of this case, it appears that R and J were also living with mother and had been doing so since S and D were

---

[1] Mother's notice of appeal in this case was filed before June 4, 2009, the effective date of the modifications to ORS 19.415 that grant us discretion whether to exercise *de novo* review of equitable cases not involving the termination of parental rights. Or Laws 2009, ch 231, §§ 2, 3. Accordingly, the standard of our review in this case is determined by ORS 19.415(3) (2007), which requires that we try the cause anew upon the record.

[2] On appeal, the parties contest, apparently for the first time, whether mother and father had joint legal custody of S before the trial court entered the order that granted sole custody of S and D to father. Before the hearing at issue in this case, both parties acted as though mother had sole custody of S, and father stated in his affidavit submitted in support of his modification motion that mother "has had custody of [S] since his birth." In addition, no clear argument was presented to the trial court indicating that mother and father had joint custody of S at the time of the hearing. In fact, the trial court found that "[m]other has been the primary parent and the sole custodial parent of the minor children of the parties."

Although father now asserts that he and mother had joint custody of S before the hearing, he does not suggest that that has any effect on the ultimate issue that we must resolve: Is it in the best interests and welfare of S that mother or father have custody of him? Consequently, we need not resolve the parties' dispute about S's custody status before the modification hearing.

born. Mother and father were never married. Father moved in with mother and the children at her home in Oregon City in 2003. Father moved out of the home in 2005 but moved back in for a period of time in 2006. In 2007, father left the family and moved to Burns. Father later returned to Oregon City for several months but moved back to Burns in April 2008.

In May 2008, mother moved with her children to Burns to reunite with father. Approximately one month later, father was arrested for assaulting mother, although no charges were filed. Father then moved to a different residence in Burns and plans to reside in that city permanently. At the time of the hearing in this case in August 2008, mother was in the process of moving with her children back to Oregon City.

Both parties litigated this matter *pro se* before the trial court. It is undisputed that mother has been the primary caregiver of the children. Neither mother nor father presented expert testimony at the hearing, and no custodial or psychological evaluations were conducted. Evidence was admitted about numerous instances of police involvement with the family in response to interactions between mother and the two fathers of her four children. According to the record, the police responded to six incidents involving mother and Howard, all of which occurred between 1996 and 2003. There is no evidence in the record that S and D were present at any of those incidents or were in any way affected by them. Furthermore, the record indicates that the police have responded to only one incident between mother and father, specifically, in June 2008 when father was arrested for assaulting mother while at least one of their children was present. Besides that incident, there is no other evidence in the record of S and D being present during any police interactions between mother and the two fathers.

We begin by addressing the trial court's modification of mother's custody of S. In order to modify custody of a minor child, the party seeking the change must establish that there has been a substantial change in circumstances since the last custody order and that it would be in the child's best interests to change custody. *See, e.g., Ortiz and Ortiz*, 310 Or 644, 649,

801 P2d 767 (1990). In this case, we need not decide whether a sufficient change of circumstances has been shown because, even assuming that that threshold is satisfied, we conclude that it was not in S's best interests that father be awarded custody.

Under ORS 107.137(1), we are to consider the following factors in determining the best interests and welfare of a child when making a custody decision:

"(a)   The emotional ties between the child and other family members;

"(b)   The interest of the parties in and attitude toward the child;

"(c)   The desirability of continuing an existing relationship;

"(d)   The abuse of one parent by the other;

"(e)   The preference for the primary caregiver of the child, if the caregiver is deemed fit by the court; and

"(f)   The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child. * * *."

After reviewing the record developed at the custody hearing and considering the statutory factors, we conclude that it is in S's best interests that he remain in mother's custody. The record indicates that S has a significant emotional bond with both parents and their extended family members. ORS 107.137(1)(a). At times, mother and father have successfully encouraged the children's relationship with the other parent; however, at other times, both parents have behaved in a manner that has undermined the children's relationship with the other parent. Thus, consideration of "[t]he willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child" does not weigh in either parent's favor. ORS 107.137(1)(f). Additionally, both parents have demonstrated an interest in and desire to be a part of S's life. ORS 107.137(1)(b). Although the record reveals that father has not always consistently exercised his right to parenting

time, it also indicates that mother has at times not cooperated with father to provide him parenting time. Thus, consideration of those statutory custody determination factors does not weigh strongly in either parent's favor.

In contrast, consideration of the remaining statutory factors decidedly tips the scale in favor of granting mother custody of S. Of foremost importance, mother has been S's primary caregiver throughout his entire life and, consequently, is the preferred person to receive custody if we determine that she is fit to do so. ORS 107.137(1)(e). The trial court found mother unfit because of her "abuse of the legal processes" and "false accusations that have resulted in numerous police contacts, many of which occurred in the children's presence." We respectfully disagree with the trial court's conclusion and, based on this record, find that mother is a fit parent and qualified for the primary caregiver preference.

■ As previously noted, the record reflects that police have responded to only one incident between mother and father. Furthermore, the record does not establish that any of the police contacts between mother and the fathers were in response to false accusations. Evidence was admitted about six interactions with the police that occurred in response to incidents between mother and Howard between 1996 and 2003. However, there is no indication in the record that S and D were present during any of those interactions or were in any way affected by them. Consequently, that evidence regarding mother's and Howard's relationship simply does not provide us with much useful information about mother's fitness as a parent to S and D and, ultimately, does not persuade us that mother is unfit with respect to those children.

Furthermore, we recognize that adverse "psychological [effects] * * * frequently result[ ] from the shifting of [a] child once [the child] has found roots of security and stability with one of [the child's] parents." *Greisamer and Greisamer*, 276 Or 397, 402, 555 P2d 28 (1976). Although the parties provided no psychological evaluations of S and D, we are persuaded by the record that a change in custody to father would effect a significant lifestyle change for S to a likely less supportive and structured home environment. Accordingly, we

find that the best interests of S are served by a continuity of custody with mother, the parent who has been his primary caregiver throughout his life. ORS 107.137(1)(c), (e).

Finally, we note that in April 2001 the court found that father had abused mother and issued a restraining order against father under the Family Abuse Prevention Act. ORS 107.705. Under ORS 107.137(2), a rebuttable presumption is thus established that it is not in the best interests and welfare of S to award custody to father.[3] Given that the balancing of the other statutory factors already weighs in favor of granting mother custody of S, we need not decide whether that presumption has been rebutted.

Based on the same considerations, we likewise conclude that it is in D's best interests that mother be awarded custody of him. Moreover, in D's case, our conclusion is reinforced by the "strong preference for keeping siblings together." *McBrayer v. Randolph*, 191 Or App 553, 558, 83 P3d 936 (2004).

Accordingly, we reverse the trial court's order modifying legal custody of S from mother to father and awarding father custody of D. Further, as previously noted, 236 Or App at 565, mother also challenges the award of parenting time in the supplemental judgment. Because the parenting plan in the supplemental judgment was predicated on the order awarding father custody and because we have reversed that order, the supplemental judgment necessarily must be reversed as well.

Order awarding legal custody of parties' children reversed and remanded for entry of order awarding custody of the children to mother; supplemental judgment reversed and remanded for creation of a parenting plan for both children.

---

[3] ORS 107.137(2) provides that

"[t]he best interests and welfare of the child in a custody matter shall not be determined by isolating any one of the relevant factors referred to in subsection (1) of this section, or any other relevant factor, and relying on it to the exclusion of other factors. However, if a parent has committed abuse, as defined in ORS 107.705, there is a rebuttable presumption that it is not in the best interests and welfare of the child to award sole or joint custody of the child to the parent who committed the abuse."