Argued and submitted February 23, reversed March 28, petition for review denied
August 16, 2012 (352 Or 341)

In the Matter of the Marriage of

Kelly R. SCONCE,
*Petitioner-Respondent,*
*and*

Bree D. SWEET,
*Respondent-Appellant.*

Douglas County Circuit Court
01DO0445CU; A147616

274 P3d 303

George W. Kelly argued the cause and filed the briefs for appellant.

Sarah Peterson argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Hadlock, Judge.

HADLOCK, J.

## HADLOCK, J.

This custody modification case underscores the importance of the change-in-circumstances determination that is a necessary predicate to an order that shifts custody of a child from one parent to the other. In this case, mother had custody of the parties' son from his birth in 1999 until late 2010, when the trial court granted father's motion to change custody. Because we agree with mother's contention that father did not prove that "there [had] been a substantial change in circumstances since the last custody order," *Travis and Potter*, 236 Or App 563, 566, 237 P3d 868 (2010), *rev den*, 349 Or 603 (2011), we reverse.

Although mother asks us to exercise our discretion to review this case *de novo*, we decline to do so, primarily because we reverse based solely on a legal error, not because of any concern about the trial court's assessment of the facts. Accordingly, we are bound by the trial court's factual findings to the extent that they are supported by any evidence in the record, and we review the court's legal conclusions for errors of law. *Porter and Griffin*, 245 Or App 178, 182-83, 262 P3d 1169 (2011); *State v. B. B.*, 240 Or App 75, 77, 245 P3d 697 (2010).

We state the facts consistently with the trial court's express and implied findings, which the record supports. The child whose custody is at issue was born in 1999 and has Down Syndrome. When the child was about 18 months old, father, who never has been married to mother, petitioned to gain legal and physical custody of him. The trial court entered an order in November 2001 temporarily granting father parenting time that would increase over the next three years. The parties entered a settlement agreement, the details of which are not reflected in the record, and the trial on father's custody motion was canceled.

Father again sought custody in 2003, based on an allegation that mother was "unable or unwilling to properly care for and protect" the child. Father expressed concern that the child was at risk of being harmed by a man whom mother had married, then divorced, and with whom she had two children who were younger than the child. Mother had obtained

restraining orders against that man, accusing him of abusing her in front of her children and of threatening to kill the child. In his 2003 custody modification motion, father alleged that mother continued to see her ex-husband and allowed him to be around the child, despite her accusations of abuse. Mother opposed father's motion. She acknowledged that her ex-husband had treated her and the child poorly, but asserted that he more recently had gone to counseling and had proved himself to be "safe and loving."

Shortly before trial on the custody modification motion, mother's ex-husband was killed in an automobile accident. The trial court denied father's custody request, explaining that, because mother's ex-husband had died, "the principal reason for the request [had] disappeared." The trial court also noted that it would not necessarily have granted father's motion even if mother's ex-husband still were alive, as mother had taken "appropriate steps to protect the child when [that man] became abusive." Moreover, the court explained, mother had been the child's primary caretaker since birth, she and the child were strongly bonded to each other, the child was also bonded to his two younger siblings, and mother was caring appropriately for the child and attending to his special needs. The court also awarded mother a portion of her attorney fees, partly because the evidence supported her claim that father and his own mother had "become too aggressive in attempting to find fault with [mother's] care of the child * * * and in looking for reasons to litigate over the child." The court entered a supplemental judgment in April 2004 that reflected its denial of father's motion to change custody. That judgment was based in part on the court's determination that a "substantial change of circumstances warranting a change in custody does not exist."[1]

In mid-2005, mother gave the trial court 30 days' notice that she and her children would be moving to Veneta, Oregon, about 90 miles from Roseburg, where father lived. Mother asserted that she was moving for a variety of reasons, including to be better able to take advantage of resources for

---

[1] The trial judge who issued the 2004 supplemental judgment is not the same judge who entered the 2010 supplemental judgment that is the subject of this appeal.

children with Down Syndrome and because she planned to attend college in Eugene. In response, father again moved for a change of custody, contending that mother's planned move to Veneta represented a substantial change of circumstances and that the move would not be in the child's best interests. After a hearing on father's motion to maintain the status quo pending resolution of the change-of-custody motion, the trial court entered a limited judgment providing that the child would remain with mother, who would not be required to move back to Douglas County, and that father would have parenting time for three weekends each month. At trial, the parties limited the issues to those relating to parenting time; consequently, the court did not address father's 2005 change-of-custody motion. In 2006, the trial court entered a supplemental judgment modifying the parenting-time arrangement. Mother gave birth to her fourth child in 2008.

The trial court file reveals no activity in the case from 2006 until June 2010, when mother moved the court for an order modifying the parenting-time provisions of the 2006 supplemental judgment. In a supporting affidavit, mother expressed her desire to move to Idaho so she could train to be a physicians' assistant through a program at Idaho State University. Mother asked that the parenting-time plan be modified to continue providing father with "reasonable access" to the child and to allow mother "to better [her] position by attending college."

In response, father again moved to change custody. In doing so, father argued that the child's needs would not be met if mother were permitted to move, and he detailed his continuing conflicts with mother over parenting time and what he believed were deficiencies in her care of the child. Mother, in turn, challenged father's contention that she did not care appropriately for the child. She also expressed her belief that the opportunities she would have in Idaho would "better the life of [her] child and also [herself]." Nonetheless, mother stated that, if the trial court required her to remain in Oregon, she "would certainly do so."

After a multi-day hearing, the trial court issued a detailed and thoughtful letter opinion in which it first addressed mother's motion to modify parenting time. The

court found that a "move to Idaho [was] simply not in [the child's] best interests" and, accordingly, the court did not modify the parenting plan as mother had requested.[2] The trial court then turned to father's motion to modify custody, which required it to assess whether a substantial change in circumstances had occurred since entry of the last custody order. *See Travis*, 236 Or App at 566. The court ruled that the most recent custody order had been entered in 2001 and determined that circumstances had changed substantially since then, based on the birth of mother's three youngest children, which the court felt resulted in mother not being able to provide the child with needed attention; the child having fallen behind academically; the child having developed a closer relationship to father since 2001; and mother's planned move to Idaho. The court also determined that a change of custody would be in the child's best interests. Accordingly, the court entered a supplemental judgment changing custody from mother to father. Mother appeals.

The general principles that apply in custody modification proceedings are well established.

> "A parent seeking a custody change must show that (1) after the original judgment or the last order affecting custody, circumstances relevant to the capacity of either the moving party or the legal custodian to take care of the child properly have changed, and (2) considering the asserted change of circumstances in the context of all relevant evidence, it would be in the child's best interests to change custody from the legal custodian to the moving party."

*Boldt and Boldt*, 344 Or 1, 9, 176 P3d 388, *cert den*, 555 US 814 (2008). The threshold question in this case relates to the first step of that two-part test, that is, whether father met his burden of proving that circumstances related to one of the parents' ability to properly care for the child had changed substantially since the last custody order. We agree with mother that the trial court applied an incorrect legal standard when it considered that question.

---

[2] As discussed later in this opinion, mother does not challenge that aspect of the trial court's ruling.

A court that seeks to determine whether circumstances have substantially changed must decide, as a preliminary matter, the time period during which that change must have occurred. We and the Supreme Court have used various terms to describe the event that represents the starting point of that time period, including entry of "the original judgment or the last order affecting custody," *Boldt*, 344 Or at 9; "the previous custody arrangement," *State ex rel Johnson v. Bail*, 325 Or 392, 394, 938 P2d 209 (1997); "the last order regarding custody," *Henrickson v. Henrickson*, 225 Or 398, 402, 358 P2d 507 (1961); "the last judgment or order respecting custody," *Bradburry and Bradburry*, 237 Or App 179, 186, 238 P3d 431 (2010); "the last custody order," *Buxton v. Storm*, 236 Or App 578, 592, 238 P3d 30 (2010), *rev den*, 349 Or 654 (2011); and "the most recent custodial order," *Collins and Collins*, 183 Or App 354, 357, 51 P3d 691 (2002).

In this case, the trial court ruled that the "last custody order" was the November 2001 order granting father parenting time, not the April 2004 order denying father's motion to change custody:

"[Father's] motion to modify custody must refer back to the last custody order. In this case the only custody order is set forth in the November 2, 2001 Order Granting Temporary Parenting Time. * * * The court finds the supplemental judgment denying a change of custody filed April 1, 2004 is not the last custody order because it did not change or effect custody."

(Citations omitted.) With respect, we disagree.

We acknowledge that this court and the Supreme Court occasionally have used imprecise terms in describing the point from which any change in circumstances must be measured. As noted above, some cases use phrases like "the last order *affecting* custody," *Boldt*, 344 Or at 9 (emphasis added)—wording that appears to have prompted the trial court's ruling that only an order that modified custody counts as "the last custody order" since which circumstances must have changed. For three reasons, we do not believe that the word "affecting" carries that significance.

First, many of our opinions use phrases that refer generally to orders *relating* to custody, without implying that

any change in circumstances must be measured from the last order *modifying* custody. *See, e.g., Bradburry*, 237 Or App at 186 ("the last judgment or order regarding custody"); *Collins*, 183 Or App at 357 ("the most recent custodial order"). Our opinions do not suggest that we meant anything different when we used those general phrases than when we referred, instead, to orders "affecting" custody. *E.g., Brinkly and Brinkly*, 223 Or App 113, 118, 195 P3d 405 (2008), *rev den*, 346 Or 257 (2009).

Second, in at least one previous custody case—*Buxton v. Storm*—we assessed whether circumstances had changed substantially by looking back to the circumstances that had existed when the trial court entered an order in which it considered, but denied, a custody modification request. In that case, the parties originally had stipulated to a judgment that granted the mother sole custody of the parties' child. *Buxton*, 236 Or App at 581. The father later moved to change custody. In 2005, the trial court entered an order increasing the father's parenting time, but denying his custody modification motion. *Id.* at 583. Later, the father initiated a second attempt to gain custody of the child; again, the trial court denied his motion. *Id.* at 584, 591. The father appealed and, on *de novo* review, we considered whether a change in circumstances had occurred. In applying the general rule that the change in circumstances must have occurred "since the entry of the last custody order," we assessed whether circumstances had changed after "the 2005 custody determination"—a determination in which the trial court had *denied* the father's request to modify custody. *Id.* at 592. Thus, we implicitly held that the pertinent "last custody order" can be an order in which the trial court ruled on a custody matter, even if that ruling resulted in maintenance of the status quo. The trial court's ruling in this case cannot be squared with that aspect of *Buxton*. Moreover, our research has revealed no case in which we or the Supreme Court did what the trial court did here—reach back to an order or judgment that changed custody, skipping over a subsequent order that denied a custody modification motion.

Third, measuring any change in circumstances from the date of the last order modifying custody, instead of from the date of the most recent order ruling on custody, also

would conflict with the policies upon which the change-in-circumstances requirement is based. "The change in circumstances rule is meant to avoid repeated litigation and promote stability for the child." *DeWolfe v. Miller*, 208 Or App 726, 744, 145 P3d 338 (2006), *rev den*, 342 Or 503 (2007). As we have explained, the rule reflects that earlier custody rulings have preclusive effect:

> "Unless the parent seeking a custody modification 'establishes that the facts that formed the basis for the prior custody determination have changed materially by the time of the modification hearing, the prior adjudication is preclusive with respect to the issue of the best interests of the child under the extant facts.' That preclusive effect means that a parent seeking a change in custody cannot rely, to establish a change in circumstances, on evidence that was or could have been introduced in the earlier custody proceeding."

*Id.* (quoting *State ex rel Johnson*, 325 Or at 398). That principle applies equally to prior orders that modified custody and to prior orders denying requests that custody be modified. Otherwise, a parent whose attempt to gain custody of a child failed could promptly renew his or her motion, making that child the subject of continual litigation even when the parents' and the child's circumstances remained static.

In short, the trial court erred when it ruled that "the last custody order," for purposes of the change-in-circumstances requirement, was the 2001 order granting temporary parenting time. Instead, "the last custody order" was the April 2004 supplemental judgment in which the trial court denied father's motion to change custody. That error significantly affected the outcome of this case, as the trial court based its determination that a substantial change in circumstances had occurred largely on events that took place between 2001 and 2004, like the birth of two of mother's children and father having grown closer to the child since 2001.

A question remains regarding the appropriate appellate disposition, given that error. When we determine that a trial court applied an incorrect legal standard when it made a fact-dependent ruling, "we sometimes remand so the trial court may apply the correct standard in the first

instance." *Williams v. Salem Women's Clinic*, 245 Or App 476, 483, 263 P3d 1072 (2011). Here, however, no remand is necessary because we hold, as a matter of law, that father did not meet his burden of proving that a substantial change in circumstances had occurred since the 2004 custody order was entered.

In so holding, we focus on the post-2004 events that father identifies as establishing a substantial change of circumstances: mother's proposed relocation to Idaho; the birth of mother's fourth child; father's assertion that the father of that fourth child has observed that mother "treats [the child] as less than an equal with her other children"; mother's allegedly worsened financial circumstances; and father's assertion that mother's parenting recently has gone "downhill." Given the specific facts of this case, we hold that none of those events—either alone or in combination—establishes that "circumstances relevant to the capacity of either party to care for the child have substantially changed" since 2004. *Brinkly*, 223 Or App at 118.[3]

Other than mother's proposed relocation, the claimed post-2004 changes require relatively little comment. No evidence in the record establishes that mother's ability to care for the child has been adversely affected—much less substantially so—by the birth of her fourth child. A child-services worker did testify that parents who are raising three or four young children may face challenges, particularly when the family includes one child with special needs. But that witness was not acquainted with mother, and she offered no individualized opinion on how the birth of mother's fourth child might have affected her ability to care for the child whose custody is at issue here. We decline to hold that a substantial change of circumstances occurs—and that a parent therefore may relitigate what custody arrangement is in the best interests of a child with special needs—*whenever*

---

[3] We reject father's suggestion that a different standard applies in custody modification cases that involve a custodial parent's proposed relocation. *See Hamilton-Waller and Waller*, 202 Or App 498, 506, 123 P3d 310 (2005) (holding that, even in the relocation context, "a court must first conclude that there has been a substantial change of circumstances in a party's capacity to parent before it may consider whether a change in custody would be in the best interests of the children").

such a child gains a sibling. Instead, family-specific evidence must establish that the increased family size has, in fact, substantially changed the ability of the child's parent to provide appropriate care. No such evidence exists in this case.

Father also points to testimony from the father of mother's fourth child, in which that witness said that mother had not always treated the child "as an equal towards the other boys." But when asked on cross-examination to describe a specific event that demonstrated how mother treated the child as less than equal, the witness could not recall "any particular incidences." The evidence related to mother's changed financial circumstances is no more significant. Mother had been unemployed for a couple of years preceding trial, but she received child-support and Social Security payments for her children's benefit, and the record includes no evidence that her financial situation has deteriorated significantly since 2004. Finally, father's testimony that mother's parenting had gone "downhill" related to his concerns about what might happen *if* mother moved her family to Idaho so she could continue her education—something that the trial court did not allow to happen. Indeed, father acknowledged at trial that, except for mother "trying to move, trying to go to a new school," she had "been doing fairly well" at parenting. Accordingly, his testimony does not establish that mother's ability to care for the child had deteriorated significantly since 2004. Considering all of the evidence discussed above, we determine that it is legally insufficient to establish that mother's capacity to care for the child had changed *substantially* in the six years preceding this custody modification trial. *Cf. Collins*, 183 Or App at 358 (occasional mistakes and "isolated incidents of misconduct" do not amount to a "substantial change in circumstances").

That leaves us with the event on which father relies most heavily in arguing that a substantial change in circumstances occurred: mother's proposed move to Idaho with the child. Father contends that the child's care would have suffered had the move actually occurred. He also argues that the mere fact that mother *proposed* moving establishes that she no longer can appropriately parent her special-needs child. Father relies heavily on our decision in *Hamilton-Waller and Waller*, 202 Or App 498, 123 P3d 310 (2005), to support both

of those arguments. Accordingly, we discuss that opinion in some detail.

*Hamilton-Waller* was a "child custody case in which mother appeal[ed] a judgment changing custody of two of the parties' children to father in the event that mother move[d] to Holland." 202 Or App at 500. The parents in that case had stipulated to the terms of a dissolution judgment that awarded the mother custody of the couple's two youngest children. Shortly after that judgment was entered, the mother informed the father that she intended to move to Holland with those children, to live with her Dutch fiancé. The father responded by filing a motion to change custody. At trial, the mother testified that she would not move to Holland if she could not take the children with her. *Id.* The trial court concluded that the proposed move would constitute a substantial change in circumstances and that it would be "in the best interests of the two children to change custody of them to father if mother moved to Holland." *Id.* at 501. The trial court also ruled that the mother would retain custody of the children if she did not move to Holland. *Id.* The mother appealed.

On appeal, we first considered whether the father had proved that "there [had] been a substantial change of circumstances * * * relevant to mother's or father's capacity to parent." *Id.* at 506. We explained that a custodial parent's move "does not automatically constitute a substantial change of circumstances for purposes of assessing a request for a change in custody." *Id.* at 507. Instead, courts "must examine whether the move or proposed move by a custodial parent will have a significant adverse effect on one or both parents' capacity to care for the children." *Id.* We determined that, given the particular facts at issue in *Hamilton-Waller*, the father had "established a substantial change in circumstances by showing that the move would have a detrimental effect on *his* capacity to parent" children whom he no longer would be able to see on a weekly basis. *Id.* at 509 (emphasis in original). We then assessed whether a change in custody would be in the children's best interests, ultimately concluding that it would not, and we held that the mother should retain custody even if she moved to Holland. *Id.* at 521.

As noted, father relies on *Hamilton-Waller* to support his argument that mother's proposed move to Idaho constituted a substantial change in circumstances. He contends that, just as the *Hamilton-Waller* father proved that the mother's move to Holland would adversely affect his ability to spend time with and parent their children, he has established that mother's proposed move to Idaho "would make it impossible for him to continue the established schedule that provides him liberal parenting time and would make his ability to continue in his parenting role extremely difficult."

Father's reliance on *Hamilton-Waller* is misplaced because this case differs significantly in two respects, one related to the trial courts' decisions and one related to the issues presented on appeal. First, the *Hamilton-Waller* trial court would have allowed the mother to retain custody of her children if she decided not to move to Holland; the court's decision to change custody to the father was contingent on the mother following through with her relocation plans. Thus, that trial court's entire change-of-circumstances analysis was premised on its concerns about adverse effects that it believed actually would follow the mother's relocation. In this case, by contrast, mother's planned relocation to Idaho depended on the trial court granting her motion to reduce the frequency of father's parenting time with the child. The trial court denied that motion, necessarily meaning that mother could not relocate as she had hoped. Only after rejecting mother's planned move to Idaho did the trial court then address, and grant, father's custody modification motion. Consequently, the trial court's custody ruling in this case could not have been based on the same type of concern that prompted the trial court's ruling in *Hamilton-Waller*: that adverse effects actually were going to result from a long-distance move that the custodial parent actually was going to make.

Second, and relatedly, the issues before us on appeal in this case differ from those that we decided in *Hamilton-Waller*. As noted, the *Hamilton-Waller* trial court had ruled that the mother would retain custody if she decided not to move. Consequently, its decision changing custody to the father explicitly was premised on the mother deciding to follow through with her planned move to Holland—a possibility

that still existed, and that the mother still pursued, when the mother appealed to this court. As father acknowledges, the mother's appeal in *Hamilton-Waller* "necessarily challenged the [trial] court's disapproval of her proposed relocation." In this case, mother does not challenge the trial court's denial of her motion to change the parenting plan—a ruling that amounted to a rejection of mother's proposed move to Idaho. In short, mother has abandoned her plan to relocate.

Those differences between *Hamilton-Waller* and this case are important. Our lengthy discussion in *Hamilton-Waller* focused entirely on whether either parent's ability to care for their two youngest children would be adversely affected *if* the mother moved with the children to Holland. Because the mother still sought the ability to make that move when she appealed—indeed, that was the focus of her appeal—our decision necessarily was based on a consideration of what would happen if that move in fact occurred. On *de novo* review, we found that the move would adversely affect the ability of the father to parent the children, with whom he had loving relationships; consequently, we concluded that the father had met his burden of proving that the move would constitute a substantial change in circumstances *when it actually occurred.*

Nothing in *Hamilton-Waller* supports father's argument that we should consider how a proposed move might have affected the parents' ability to care for the child if it had occurred even though the move did not, and will not, happen. And we do not understand why the law should work as father suggests. Any adverse effects that a custodial parent's planned relocation might have caused *if it had occurred* no longer are relevant to the change-of-circumstances determination once the parent abandons that plan.

We also reject father's contention that mother's contemplation of an out-of-state move was enough, itself, to constitute a substantial change in circumstances. Father contends that mother's relocation proposal demonstrates that she "is not capable of putting [the child's] needs ahead of her own." But whatever one may think of that proposal, the fact

remains that mother abandoned it in favor of retaining custody, and she made it clear from the beginning of this litigation that she would choose to remain in Oregon rather than lose custody of the child to father. We acknowledge the trial court's findings that mother's relocation plans were based on her desire to distance herself and her children from father, and that those plans elevated her own needs over those of this child. Indeed, the record includes evidence supporting the court's interpretation of mother's motivations. Nonetheless, as a matter of law, mother's uneffectuated plans—even if selfish or shortsighted—cannot constitute a substantial change of circumstances absent evidence that they actually, and substantially, interfered with her ability to care appropriately for the child. *Cf. Dillard and Dillard*, 179 Or App 24, 31-32, 39 P3d 230, *rev den*, 334 Or 491 (2002) (even an accomplished move does not amount to a substantial change in circumstances unless it "has had a significant adverse effect" on a parent's "capacity to care for the children"). The record in this case includes no such evidence.

Reversed.