Argued and submitted June 4, 2013, affirmed March 19, 2014

In the Matter of

Alazne Andone IBARRA,
fka Alazne Andone Conn,
*Petitioner-Appellant,*
*and*

Wesley Thomas CONN,
*Respondent-Respondent.*

Jackson County Circuit Court
101653Z9; A149860

323 P3d 539

George W. Kelly argued the cause and filed the briefs for appellant.

Laura Graser argued the cause and filed the brief for respondent.

Before Ortega, Presiding Judge, and Hadlock, Judge, and Norby, Judge pro tempore.

ORTEGA, P. J.

## ORTEGA, P. J.

Mother appeals a supplemental judgment that changed custody of the parties' daughter from mother to father. Mother contends that the trial court erred, under ORS 107.135, in finding that there had been a substantial change in circumstances. We conclude that the record is insufficient for us to review whether the trial court erred when it determined that there had been a substantial change in circumstances supporting the change in custody. Accordingly, we affirm.

We review the trial court's factual findings for any evidence and its legal conclusions for errors of law. *Sconce and Sweet,* 249 Or App 152, 153, 274 P3d 303, *rev den,* 352 Or 341 (2012). As in other equitable proceedings, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.,* 257 Or App 633, 639, 307 P3d 444 (2013) (stating our standard of review in juvenile dependency cases).

We state the facts consistently with that standard. The original judgment of dissolution of the parties' marriage, entered in Washington in 2009, provided for them to share joint custody of their then eight-year-old daughter, R. C. That same year, mother moved to Medford, Oregon, and registered the judgment there. R. C. was placed in a White City school, but sometime during the 2009-10 school year, she switched to an Eagle Point school. In August 2010, the parties stipulated that mother would have sole custody of R. C. and father would have 120 days of parenting time; a judgment so providing was entered in December 2010. That month, father moved to Arizona, where he currently lives with his new wife and her three children from a previous marriage, whom father adopted. In June 2011, mother moved with her boyfriend, his daughter, and her two daughters[1] to Boise, Idaho. R. C. registered to start school there in August. She spent a few weeks in Idaho before she traveled

---

[1] Mother has two daughters, but only one is father's daughter; custody of the other daughter is not at issue.

to Arizona to be with father for the remainder of the summer. While in Arizona, R. C. became adamant about her desire to live with father and, consequently, in August, father filed a motion seeking sole custody of her.

At a hearing in September 2011, the court heard from mother and father. Both parties testified about times when R. C. did not want to go to the other parent's home. Father testified that R. C. had expressed a desire to live with him for about two years, but that the intensity of those expressions had increased over time. He explained that when he tried to put R. C. on the plane to return to Idaho the month before the hearing, she had become hysterical and the airline had almost required her to leave the plane; eventually, father calmed her and she returned to Idaho.

In addition to hearing from mother and father, the court also reviewed an affidavit written by R. C. explaining that she wanted to live with father. With the agreement of both parties, the judge also spoke with R. C. in chambers with both parties' attorneys present. The parties agreed that the conversation would not be recorded and, consequently, it is not part of the record before us. At the end of the hearing, the court changed custody from mother to father, explaining:

> "I will tell you that it is very clear to me that your daughter wishes to live with [father]. There's a lot of reasons for that, some are nebulous and some are specific.
>
> "* * * * *
>
> "I'm not gonna get into anything else specifically that your daughter said because we told her we weren't going to. That was one of the agreements we made in order for her to be candid with us.
>
> "I'm going to tell you that I believe that when both parties move, that does create a change of circumstances. I also feel that changing schools three times since the divorce creates—can create a change of circumstances, in this case it does.
>
> "I feel that it is in the best interests of the child at this time to remain with her father. I'm changing custody accordingly. I'm convinced that's what your daughter wants. I'm

convinced your daughter knows what she wants and I'm convinced she knows the reasons why she wants it."

On appeal, mother assigns error to the trial court's conclusion that there was a substantial change in circumstances that warranted a change of custody. In addition, mother contends that the trial court erred in including, as part of the basis for the change, facts that predated the last custody order, entered in December 2010. Specifically, mother notes that two of the school changes referred to by the court as supporting a substantial change in circumstances occurred before that date.

In general, a party seeking a change of custody must demonstrate, first, that "there has been a substantial change in circumstances since the last custody order," and, second, "that it would be in the child's best interests to change custody." *Kirkpatrick and Kirkpatrick*, 248 Or App 539, 546, 273 P3d 361 (2012) (citation omitted). The parties agree that the December 10 order was the last custody order before the order at issue.

The trial court cited two bases for its finding that a substantial change in circumstances had occurred in this case: first, that both parties had moved, and second, that daughter had changed schools three times since the divorce. Mother is correct that two of the three school changes occurred before the last custody order, leaving the parties' most recent moves and the third school change as the remaining basis for the court's order. A custodial parent's move "does not automatically constitute a substantial change of circumstances for purposes of assessing a request for a change in custody." *Hamilton-Waller and Waller*, 202 Or App 498, 507, 123 P3d 310 (2005). Rather, the court must assess "whether the move * * * will have a significant adverse effect on one or both parents' capacity to care for the children." *Id.* (applying a *de novo* standard of review). Our review of that determination is no longer *de novo*; rather, as noted, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *N. P.*, 257 Or App at 639.

Our ability to assess whether the parties' most recent moves and the third school change would have a significant adverse effect on mother's capacity to care for R. C. is hampered by the fact that we do not have access to the entire record relied on by the trial court in making its determination. As noted, in this case, by agreement of the parties, the trial court's decision was based in part on an in-chambers discussion with R. C. that was not put on the record. The trial court's limited comments about that discussion suggest that the content of that discussion influenced the court's assessment of the existence of a substantial change in circumstances.

In the past, when all custody cases were reviewed *de novo*,[2] the Supreme Court held that such review was not possible where the appellant had agreed or acquiesced to the trial judge making an independent investigation of the case off the record. *See Rea v. Rea*, 195 Or 252, 279-80, 245 P2d 884 (1952). That rule was also applied to "preclude *de novo* review in custody cases where interviews with children in chambers were not made part of the trial court record," and where such interviews were used as part of the trial court's investigation. *Meader v. Meader*, 194 Or App 31, 40-41, 94 P3d 123, *rev den*, 337 Or 555 (2004) (citing cases). However, such interviews did not preclude *de novo* review if they did not have evidentiary significance to the determination under review. *Id.* at 43 (declining to find that the parents had consented to a waiver of *de novo* review of a ruling regarding grandparent visitation under circumstances where the record did not establish that the trial court's interview of the affected children was for purposes of deciding the central issue of the children's best interests).

Although we no longer review custody determinations *de novo*, the record before us does not allow us to meaningfully evaluate the trial court's assessment of the existence of a change in circumstances supporting the modification of custody. An appellant bears the burden of providing

---

[2] Historically, in domestic relations cases, we reviewed the facts *de novo* under prior versions of ORS 19.415(3). In 2009, however, the legislature changed our standard of review by amending ORS 19.415. Or Laws 2009, ch 231, § 2. Currently, under ORS 19.415 and ORAP 5.40(8)(c), we exercise our discretion to review equitable matters *de novo* only in "exceptional cases."

a record sufficient to demonstrate that error occurred. *See generally King City Realty v. Sunpace*, 291 Or 573, 582, 633 P2d 784 (1981) ("It is well established that it is the duty of the appellant to designate and bring to the appellate court such portions of the record of the proceedings before the trial court as are necessary to support and establish his contention that the trial court committed the error of which the appellant complains on appeal."). We have applied that principle on numerous occasions. *See Ferguson v. Nelson*, 216 Or App 541, 549-50, 174 P3d 620 (2007) (citing cases).

Here, as noted, we are charged with the task of "view[ing] the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess[ing] whether, when so viewed, the record was legally sufficient to permit" the court to conclude that a substantial change in circumstances exists. *N. P.*, 257 Or App 633. It is apparent that the trial court's discussion with R. C. influenced its final determination regarding the change in custody. Although we cannot tell for sure what influence that discussion may have had on the court's determination as to a substantial change in circumstances, mother bears the burden of making a sufficient record for us to make that assessment. Instead of providing a recording or other adequate memorialization of the court's discussion with R. C., the parties agreed to a more limited record that precludes the review that mother now seeks. Accordingly, because we conclude that the record is insufficient to allow us to review whether the trial court's determination that the parties' moves since the last custody order have so affected their ability to care for R. C. as to constitute a substantial change in circumstances supporting the modification of custody, we decline to undertake that review. *See Eichler v. Hetzel*, 37 Or App 305, 308, 587 P2d 106 (1978) (affirming judgment because the court could not review the claims of error based on the record made in trial court).

Affirmed.